TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Acting Chief, Major Crimes Section
JENA A. MACCABE (Cal. Bar No. 316637)
Acting Deputy Chief, Major Crimes Section
Assistant United States Attorneys
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6495/5046
     Facsimile: (213) 894-0141
     E-mail:    kevin.butler2@usdoj.gov
                jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 25-132-FLA |
|---|---|
| Plaintiff, | SENTENCING MEMORANDUM |
| v. | Hearing Date: 9:00 a.m. |
| ZIHIRR MITCHELL,<br>  aka "Bricc Baby,"<br>  aka "Big Shitty,"<br>  aka "MPA Shitro,"<br>  aka "Shitty Montana,"<br>  aka "Bricc Baby Shitro," | Hearing Time: December 19, 2025<br>Location:    Courtroom of the<br>             Hon. Fernando L.<br>             Aenlle-Rocha |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its sentencing memorandum.

This sentencing memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: December 5, 2025

Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

        /s/
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

ii

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Defendant ZIHIRR MITCHELL ("defendant") has pleaded guilty to being a felon in possession of firearms and ammunition seized from his home in 2023 and admitted to also being a felon in possession of more ammunition he fired at others in a parking lot in 2022, as well as submitting a fraudulent application for disaster relief based on the January 2025 fires.  For his crimes, the United States Probation and Pretrial Services Office (the "USPO") calculated a total offense level of 23 and a criminal history category of VI, resulting in a Sentencing Guidelines range of 92 to 115 months' imprisonment. (Presentence Investigation Report ("PSR") ¶ 139, Dkt. 31.)  The USPO further found no basis for a departure or variance from that range. (Id. ¶¶ 153-154.)  The government agrees and respectfully recommends that defendant be sentenced to 92 months' imprisonment, three years' supervised release, no fine, and a $100 special assessment.

**II.   DEFENDANT'S CRIMES[1]**

Over multiple months in 2023, law enforcement intercepted defendant on a wiretap of multiple Rollin' 60s gang members' phones. On multiple intercepted calls, defendant was heard discussing criminal activity, including recounting murders he committed as a youth.  In March and June 2023, on intercepted calls, multiple people accused defendant of pointing a gun at them and even defendant's own daughter.  Law enforcement then sought a search warrant for defendant's home where they found three firearms, including an

---

[1] Because this Court did not preside over defendant's bail request, the government incorporates by reference its statement of facts from that briefing.  (See Dkt. 22.)

assault rifle style firearm, and over 125 rounds of ammunition. Law enforcement also learned that defendant shot three bullets in a business parking lot in July 2022 to ward off would-be robbers. They found another firearm and even more ammunition when they arrested him on those charges in March 2025. Each possession followed multiple prior felony convictions, any of which alone prohibited him from possessing any firearm or ammunition, not to mention the dangerous and unlawful ways he was using the firearms even if he was permitted to possess them.

Separate and apart from defendant's unlawful possession of firearms and ammunition, in February 2025, defendant filed an application for disaster assistance, knowingly and falsely claiming that defendant was renting a home in Pasadena, California, that was destroyed by the Eaton fire. By doing so, defendant attempted to receive Federal Emergency Management Agency ("FEMA") benefits. Defendant knew, however, that he never lived in or rented the home in Pasadena, was not a victim of the Eaton wildfire (which was declared a federal disaster), and was not entitled to any of the benefits or funds he sought in filing the false application. When the genuine homeowner and victim of the disaster applied for a loan, it was denied due to defendant's pending false application.

**III. GUIDELINES CALCULATIONS**

The USPO and government agree that the base offense level for each count in the indictment is 20 under U.S.S.G. § 2K2.1(a)(4)(A) because defendant had been convicted of a crime of violence before

committing each of those crimes.[2]  (PSR ¶¶ 32-33, 40-41); see also Cal. Penal Code § 422(a) (criminalizing "willful[] threat[s] to commit a crime which will result in death or great bodily injury to another person"); Arellano Hernandez v. Lynch, 831 F.3d 1127, 1130 (9th Cir. 2016) ("[A] conviction under [California Penal Code] sections 422 and 664 is categorically a crime of violence.").  For count two, the USPO and parties agree that a two-level increase under U.S.S.G. § 2K2.1(b)(1)(A) applies because defendant possessed three firearms.  (PSR ¶¶ 34-35; Plea Agreement ¶ 12, Dkt. 26.)  For count one (i.e., pseudo count 2A in the PSR), the USPO and parties agree that a four-level increase under U.S.S.G. § 2K2.1(b)(7)(B) applies because defendant possessed the ammunition in connection with another felony offense, namely, shooting at people from a parking lot.  (Id. ¶¶ 34-35; Plea Agreement ¶ 12.)  Finally, for defendant's fraud in connection with a major disaster and emergency benefits (i.e., pseudo count 2B in the PSR), the USPO and parties agree to all the calculations; specifically, the base offense level is seven under U.S.S.G. § 2B1.1(a)(1), and the resulting offense level is increased to 12 under U.S.S.G. § 2B1.1(b)(12) because the offense involved disaster fraud.  (Id. ¶¶ 48-53; Plea Agreement ¶ 12.)

The highest total offense level of the foregoing counts is 24, which receives a two-level increase for multiple counts.  (PSR ¶¶ 54-56.)  The USPO and government agree that a three-level reduction for acceptance of responsibility applies under U.S.S.G. § 3E1.1.  (Id. ¶¶ 59-60.)  Thus, the total offense level is 23.  (See id. ¶ 62.)

---

[2] Neither party is bound to the base offense levels listed in the plea agreement for the 18 U.S.C. § 922(g)(1) counts because defendant's base offense level was altered by a prior conviction for a crime of violence.  (Plea Agreement ¶ 12.)

3

The USPO and government agree that defendant is in criminal history category VI.  (Id. ¶ 80.)  With the foregoing calculations, defendant's Guidelines range is 92 to 115 months.  (Id. ¶ 139.)

**IV.  GOVERNMENT'S RECOMMENDATION**

**A.   Imprisonment**

The Court must impose a sentence that is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).  The Court shall consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).  In addition, the Court should fashion a sentence that reflects the seriousness of the offense, promotes respect for the rule of law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from future crimes of the defendant, among other considerations.  18 U.S.C. § 3553(a)(2).

The government recommends that defendant be sentenced to 92 months' imprisonment, which is the low end of the Guidelines range. Such a sentence is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

1.   Nature and Circumstances of the Offense

The Court must consider the nature, circumstances, and seriousness of the offenses.  18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Here, the government's proposed sentence reflects the seriousness of defendant's crimes.

In this case alone, defendant possessed multiple firearms, on multiple occasions, and over 125 rounds of ammunition, some of which he fired.  First, defendant shot at would-be robbers in a business parking lot.  Less than a year later, he was found with more firearms

4

after purportedly pointing them at his partner and child.[3]  Each time, defendant was prohibited from even possessing firearms and ammunition, let alone so dangerously using them.  Defendant then possessed yet another firearm the night before his arrest during a live streamed podcast with one of his rivals and that gun can be seen in defendant's waistband.  His possession of that firearm the following day, along with even more ammunition, at home with his child during his latest arrest only further corroborates the need for a significant sentence.

But defendant's crimes do not pertain only to violence and weapon possession.  In his plea agreement, defendant admitted to fraudulently applying for FEMA benefits by claiming to be a renter of a Pasadena home that was destroyed in the Eaton fire in January 2020.  Because of defendant's false application, the homeowner who really lost his home had his own loan application denied.

Defendant's crimes have consequences, first for his victims, and now for himself.  That is why the government is seeking a 92-month sentence.

### 2. History and Characteristics of Defendant

Defendant's history and characteristics also warrant a 92-month sentence.  Defendant's criminal history is decades long.  His first felon-in-possession-of-a-firearm offense specifically dates back to 2009.  (PSR ¶ 68.)  His probation violations began no later than 2012.  (Id. ¶ 69.)  By 2014, he threatened a crime with intent to

---

[3] Leading up to the 2023 search warrant, defendant stated on intercepted calls that he would simply throw the firearms off the balcony of his apartment into the courtyard below if the police ever arrived -- which he attempted to do when the search warrant was executed.

5

terrorize his victim, received a stay-away order, and blew through the court's leniency with multiple probation revocations. (Id. ¶ 74.) Much like his attitude encapsulated in wiretap calls in this case and on a video podcast as late as this year, back in 2016, he assaulted victims with a deadly weapon when he lifted his shirt to brandish a firearm saying, "Don't fuck with me." (Id. ¶ 76.) Even his six-year prison sentence for robbery in 2020 did not dissuade defendant from committing all the crimes in this case. (See id. ¶ 78.) All of that, which is only a fraction of defendant's criminal history surpassing the points needed to be in the highest criminal history category, and includes a high speed chase ending with defendant barricading himself inside a home on television (which defendant later glamorized in music videos), warrants the government's recommended sentence.

3. <u>Need for Deterrence and to Promote Respect for the Law</u>

The recommended 92-month sentence is necessary not only to deter defendant, but also to adequately deter others. See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed is required "to afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence). This 92-month term of imprisonment is warranted here to adequately deter defendant and others from further criminal conduct. It is longer than past sentences he has received for a good reason: defendant's past sentences were too lenient to promote his respect for the law.

**B.     Supervised Release**

Given the seriousness of the instant offenses, the imposition of a three-year term of supervised release would provide a needed additional incentive for defendant to refrain from committing further

6

crimes. In this case alone, defendant admitted to three separate crimes during three separate years, starting with a shooting and ending with disaster fraud. His criminal history -- which landed him in the highest criminal history category -- is riddled with prior probation violations. (PSR ¶¶ 69, 72, 74.) A three-year term of supervised release is sufficient, but not greater than necessary, to protect the public and deter future criminal conduct.[4]

## V. CONCLUSION

Defendant and his conduct are full of contradictions. Defendant purports to be a dedicated father and indeed appeared to be present caregiver for his youngest child. Defendant also kept illegal, loaded, dangerous firearms in her presence in multiple residences unsecured. Defendant is also a charismatic and talented public figure. But thus far, defendant has used his gifts merely to glamorize violence, drug use, and a life of crime and has been unable or unwilling to transition fully from that life to a productive one. It is these contradictions that demand a Guideline sentence, but one at the low end of those Guidelines. Thus, the government respectfully recommends that defendant be sentenced to 92 months' imprisonment, three years' supervised release, no fine, and a $100 special assessment.

---

[4] The government recommends that the Court, at sentencing, incorporate by reference and impose the standard conditions of supervised release enumerated in Second Amended General Order 20-04.

7