Megan E. Foster
THE LAW OFFICE OF MEGAN E. FOSTER, APC
California SBN 317634
Colorado SBN 50313
401 W. A Street, Suite 200
San Diego, California 92101
Telephone: (619) 736-3707
Email: Megan.Foster.Esq@gmail.com

*Attorney for Defendant Zihirr Mitchell*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**HON. FERNANDO AENLLE-ROCHA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>ZIHIRR MITCHELL,<br><br>                              Defendant. | Case No.:  2:25-CR-00132-FLA<br><br>**OBJECTION TO THE PRESENTENCE REPORT** |

**I.**
**OBJECTION TO PRESENTENCE REPORT**

Zihirr Mitchell, ("Mr. Mitchell"), by and through his attorney Megan E. Foster, pursuant to Local Criminal Rule No. 32-3.2, hereby files the following Objection to the Presentence Report (PSR).

///

///

///

///

///

///

///

1

2:25-CR-00132-FLA

## II.
## LEGAL OBJECTION

A. <u>The Grouping Analysis in the Presentence Report is Improper Because the Plea Agreement Did Not Trigger U.S.S.G. § 1B1.2(c) or Authorize Multiple-Count Treatment.</u>

The defense objects to the grouping analysis in paragraph 54 of the Presentence Report. Mr. Mitchell pled guilty to a single count, Count Two, charging a June 23, 2023 violation of 18 U.S.C. § 922(g)(1). (PSR ¶¶ 1–2; Plea Agreement ¶ 2(a)). Despite the existence of only one count of conviction, the PSR treats the admitted factual conduct as though it constituted three separate offenses and applies the multiple-count rules of U.S.S.G. § 3D1.4. (PSR ¶¶ 27, 31, 54–57). Specifically, the PSR designates the July 12, 2022 conduct as "Count 2A" and the February 14, 2025 FEMA conduct as "Count 2B," assigns one unit to each of the three episodes, and adds a two-level increase under § 3D1.4. (*Id.* ¶¶ 54–57). This approach is improper because the plea agreement did not contain a stipulation establishing additional offenses and therefore did not trigger U.S.S.G. § 1B1.2(c).

Section 1B1.2(c) is a narrow provision that applies only when a plea agreement contains a stipulation that "specifically establishes the commission of additional offense(s)." The Ninth Circuit has emphasized that the provision may be applied only where the plea agreement explicitly establishes every element of the additional offense, leaving no element to inference. See *United States v. Greene*, 137 F.4th 1056 (9th Cir. 2025). Where a plea agreement merely admits factual conduct or identifies sentencing factors, the conduct may be considered as relevant conduct under U.S.S.G. § 1B1.3, but it cannot be converted into additional pseudo-counts under § 1B1.2(c). See *United States v. Forrester*, 616 F.3d 929 (9th Cir. 2010); *United States v. Williamson*, 439 F.3d 1125 (9th Cir. 2006).

The plea agreement here does not satisfy the requirements of § 1B1.2(c). The factual basis expressly states that the admitted facts are "sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors

2

2:25-CR-00132-FLA

set forth in paragraph 12 below," and that the statement of facts "is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct." (Plea Agreement ¶ 10). Paragraph 12 then sets forth three discrete guideline calculations tied to factual categories: the July 2022 "Spent Shell Casings" conduct, the June 2023 "Search of Residence" conduct, and the "FEMA Application" conduct. (*Id*. ¶ 12; see also PSR ¶ 4). The agreement describes these facts as supporting guideline factors—not as establishing additional criminal offenses. It does not identify any additional offense by statute, state that Mr. Mitchell committed another violation of § 922(g)(1), nor otherwise stipulate to the elements of any separate crime.

The agreement further confirms that the FEMA conduct was intended to be treated as *uncharged* relevant conduct rather than as a separate offense. The government agreed not to prosecute Mr. Mitchell for violations of 18 U.S.C. §§ 1343, 1040, or 287 arising from the FEMA-related conduct while reserving the right for the Court to consider that conduct at sentencing *in consideration for* Mr. Mitchell agreeing to plead to the felon in possession count and saving the government considerable additional time and resources with the grand jury or otherwise in having to go forward charging the FEMA-related conduct. (Plea Agreement ¶ 4(e)). By its terms, this provision characterizes the FEMA conduct solely as uncharged conduct that may be considered for sentencing purposes—not as a stipulated offense that should be treated as an additional count under § 1B1.2(c). Likewise, the July 12, 2022 conduct is referenced only to support the "Spent Shell Casings" guideline factor and is not described as a separate § 922(g)(1) violation. (*Id*. ¶¶ 10, 12).

In contrast, the PSR invokes § 1B1.2(c) to convert these sentencing factors into pseudo-counts. Paragraph 27 states that the plea agreement contains a stipulation establishing additional offenses and asserts that Mr. Mitchell admitted to committing felon-in-possession on July 12, 2022 (Count 2A) and fraud in connection with a major disaster on February 14, 2025 (Count 2B). Paragraph 31 then treats Counts 2, 2A, and 2B as separate counts, and paragraph 54 assigns units under § 3D1.4 and applies a two-level increase. This application § 1B1.2(c) conflicts with Ninth Circuit precedent, which requires

3

2:25-CR-00132-FLA

that the plea agreement explicitly establish the elements of an additional offense before pseudo-count treatment is permitted. *Greene*, 137 F.4th at 1056. In the plainest terms, Mr. Mitchell only agreed to plead guilty to the felon in possession count and did not agree (nor would he have agreed) to plead guilty to three counts, one of which was never even charged, such that Probation, the government, and then the Court would subvert the agreement he entered into in good faith to resolve the case so as to essentially double his sentencing exposure with unadmitted to grouping.

This understanding is reinforced by the government's own description of the plea agreement when it was transmitted to defense counsel. In the accompanying correspondence, the government explained that the FEMA fraud was "included in the factual basis" of the plea agreement and subject to a non-prosecution provision. That description is consistent with the text of the agreement itself, which treats the FEMA conduct as uncharged conduct that may be considered at sentencing but does not identify it as a separate offense of conviction or stipulate to the elements of a new crime.

Plea agreements are interpreted according to ordinary contract principles, and ambiguities must be construed against the government as the drafter. *United States v. Transfiguracion*, 442 F.3d 1222 (9th Cir. 2006); *United States v. Speelman*, 431 F.3d 1226 (9th Cir. 2005). Nothing in the agreement indicates that the parties intended to stipulate to additional offenses nor to authorize the creation of pseudo-counts under § 1B1.2(c). At most, the agreement establishes factual admissions supporting guideline factors (as so characterized in the plea agreement) and relevant conduct, which defense counsel agrees to as evidence of the actual intent of the Parties. Interpreting those admissions as stipulations to additional crimes would expand the agreement beyond its plain terms and is not the agreement Mr. Mitchell believed he entered into.

Because the plea agreement does not specifically establish the commission of additional offenses, § 1B1.2(c) does not apply. Without that provision, the July 2022 and FEMA conduct cannot be treated as separate counts for purposes of the multiple-count rules in § 3D1.4. The grouping analysis in PSR paragraph 54 therefore rests on an incorrect

4

2:25-CR-00132-FLA

application of the Guidelines and should be rejected. The offense level should instead be calculated based on the single count of conviction, with the admitted conduct considered only as sentencing factors and relevant conduct as contemplated by paragraph 12 of the plea agreement.

**II.**

**CONCLUSION**

For the foregoing reasons, Mr. Mitchell respectfully requests that the Court sustain his objection to the Presentence Report's grouping analysis. The plea agreement does not contain a stipulation establishing the commission of additional offenses and therefore does not trigger U.S.S.G. § 1B1.2(c). Because § 1B1.2(c) does not apply, the July 2022 and FEMA-related conduct cannot be treated as separate counts for purposes of the multiple-count rules under U.S.S.G. § 3D1.4.

Accordingly, the Court should reject the pseudo-count treatment reflected in PSR paragraphs 27, 31, and 54–57 and calculate the advisory guideline range based on the single count of conviction, considering the admitted conduct only as sentencing factors and relevant conduct as contemplated by paragraph 12 of the plea agreement.

Respectfully submitted,

*Megan E. Foster*

DATED: March 16, 2026          **MEGAN E. FOSTER**
Law Office of Megan E. Foster, APC
Attorney for Mr. Mitchell

2:25-CR-00132-FLA