Megan E. Foster (SBN 317634)
Law Office of Megan E. Foster, APC
401 W A Street, Ste 200
San Diego, CA 92101
Phone: (619) 736-3707
megan.foster.esq@gmail.com

Zach A. Brooks (SBN 346455)
Zach Brooks Law, SP
421 Broadway, Unit 698
San Diego, CA 92101
zbrooks@zachbrookslaw.com

*Attorneys for Defendant Zihirr Mitchell*

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
HON. FERNANDO L. AENLLE-ROCHA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  2:25-cr-00132-FLA |
| Plaintiff, | **MR. MITCHELL'S MEMORANDUM IN AID OF SENTENCING** |
| v. | |
| ZIHIRR MITCHELL, | |
| Defendant. | |

Defendant Zihirr Mitchell ("Mr. Mitchell"), by and through his counsel, Megan E. Foster and Zach A. Brooks, respectfully submits this memorandum to assist the Court in determining an appropriate sentence under 18 U.S.C. § 3553(a).

**I.
INTRODUCTION.**

Mr. Mitchell appears before this Court having accepted responsibility for his conduct having pled guilty to a single count of felon in possession of a firearm. He does not seek to minimize his actions but instead asks to be sentenced in a manner that reflects who he

1
*U.S. v. Mitchell*, Defense Sentencing Memorandum
2:25-cr-00132-FLA

actually is, and what he has had to endure and overcome, rather than what an inflated criminal history score suggests.

Pursuant to Mr. Zihirr's plea agreement, he faces an advisory guideline range of 63 to 78 months based on a total offense level of 19 and a criminal history category of VI. That designation, however, presents an incomplete and ultimately misleading picture. Mr. Mitchell is not the type of offender for whom Category VI was designed. His score is driven in substantial part by dated convictions, minor conduct, and technical sentencing outcomes that, when viewed in context, significantly overstate both the seriousness of his past and his risk of future harm.

Mr. Mitchell is a 37-year-old man whose life has been shaped by trauma, loss, and repeated exposure to violence. He has been shot twice, suffers from lasting physical limitations, and has been diagnosed with PTSD, depression, and anxiety. He grew up without stable parental guidance, lost the brother he viewed as a father figure, and found himself, like many young men in similar circumstances, pulled into environments that shaped poor decisions early in life. At the same time, the record reflects a man who has worked his way up through impossible odds, supported his family, maintained meaningful relationships with his children, who enjoys extensive familial, community, and professional support, and who has expressed a genuine desire to change the trajectory of his life at the conclusion of this case.

Whether or not the Court sustains the Defense objections to the Presentence Report and the guideline calculations therein, the advisory guideline range fails to account for these realities. A sentence within that range would be greater than necessary to achieve the purposes of sentencing. In keeping with the guideline calculation as contemplated by the Parties in the plea agreement, Mr. Mitchell believes sentence of 57 months' custody is sufficient to promote respect for the law, provide just punishment, and protect the public.

For these reasons, Mr. Mitchell respectfully requests that this Court impose a sentence below the advisory guideline range.

2

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

## III.
## THE GUIDELINES AND THE 3553(A) SENTENCING FACTORS.

This Court has broad discretion in choosing an appropriate sentence. While the Sentencing Guidelines provide a starting point, they are advisory, and the Court must impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). The Court must make an individualized determination after full consideration of those factors. *United States v. Booker*, 543 U.S. 220 (2005).

### A. The Guidelines.

Mr. Mitchell's offense level is driven by U.S.S.G. §§ 2K2.1, as set forth in the plea agreement. Consistent with that agreement, the appropriate calculation begins with a base offense level of 20, a two-level increase for multiple firearms, and a three-level decrease for acceptance of responsibility, resulting in an offense level of 19.[1]

| | |
|---|---|
| Base Offense Level (U.S.S.G. §§ 2K2.1) | 20 |
| Multiple Firearms (U.S.S.G. § 2K2.1(b)(1)(A)) | +2 |
| Acceptance of Responsibility (U.S.S.G. §§ 3E1.1(a), 3E1.1(b)) | -3 |
| Adjusted Offense Level: | 19 |

*Adjusted Guidelines Range.*

Probation assigns Mr. Mitchell to Criminal History Category VI, resulting in an advisory guideline range of 63 to 78 months at an adjusted offense level of 19. As reflected throughout this memorandum, however, that criminal history category substantially overstates both the seriousness of Mr. Mitchell's record and the likelihood that he will

---

[1] See ECF No. 35 (Defendant's Objection to the Presentence Report), which sets forth defense counsel's position regarding the proper calculation of Mr. Mitchell's offense level and criminal history score.

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

commit future crimes. In considering the other 3553(a) factors, Mr. Mitchell requests a further downward variance.

///

///

**B. The § 3553(a) Factors Support a Variance to a Sentence of Fifty-Seven Months.**

*1. Nature & Circumstances of Offense.*

Mr. Mitchell has accepted responsibility for his conduct and pled guilty to a single count of being a felon in possession of a firearm. (PSR ¶ 1.) He does not dispute the factual basis set forth in the Presentence Investigation Report and acknowledges that his conduct was unlawful. Mr. Mitchell has accepted responsibility for all of this conduct and even made admissions regarding uncharged conduct at an early stage of the case, saving the government and this Court considerable time and resources. He has not sought to minimize his actions. (*Id.* at ¶ 25.) His acknowledgment of wrongdoing reflects an understanding of the seriousness of the offense and a willingness to be held accountable.

*2. Personal History & Characteristics.*

Mr. Mitchell's history and characteristics weigh strongly in favor of a sentence below the advisory guideline range. This is not only due to the trauma and hardship that have shaped his life, but also because the criminal history category assigned to him substantially overstates both the seriousness of his past conduct and his likelihood of recidivism.

**A. Mr. Mitchell's Criminal History Category Overstates the Seriousness of His Record and the Likelihood of Recidivism.**

Under 18 U.S.C. § 3553(a), this Court must conduct an individualized assessment of the person before it, including whether the advisory guideline range accurately reflects that individual's history and characteristics. Courts in the Ninth Circuit have long recognized that criminal history calculations may overstate both the seriousness of a defendant's record and the likelihood of recidivism where the score is driven by minor,

4

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

dated, or atypical prior conduct. See *United States v. Brown*, 985 F.2d 478 (9th Cir. 1993) (applying former U.S.S.G. § 4A1.3, since removed); *United States v. Lawrence*, 916 F.2d 553 (9th Cir. 1990) (same). Further, 18 U.S.C. § 3661 grants this Court wide latitude in evaluating whether a defendant's criminal history category accurately reflects their past conduct and likelihood of recidivism.

Given that much of Mr. Mitchell's scorable criminal history meets such criteria, Mr. Mitchell invites the Court to consider him as more properly situated in Criminal History Category V. To start, four criminal history points arise from two misdemeanor convictions for driving on a suspended license in 2015 and 2016. (PSR ¶¶ 75, 77.) These administrative offenses, both now over 10 years old, in the ordinary course would not be counted in calculating criminal history pursuant to 4A1.2(c)(1) unless they resulted in custodial sentences over 30 days. Here, Mr. Mitchell resolved these charges with jail sentences only because he was already in custody at the time and believed he was resolving those matters concurrently with time he was already serving. As a result, conduct that would ordinarily carry little or no weight in a criminal history calculation – conduct that is nonviolent, misdemeanor conduct, normally resolved with a fine only, instead contributes four criminal history points, effectively elevating him into the highest criminal history category based on traffic offenses alone. This distortion is compounded by the fact that Mr. Mitchell's license had been suspended for medical reasons following a shooting and spinal injury and the delay in medical facilities communicating Mr. Mitchell's medical clearance to the DMV, rather than due to reckless driving or repeated disregard for traffic laws. These convictions do not reflect dangerous conduct or an increased risk of recidivism, yet they account for a substantial portion – *a full 25%* – of his criminal history score. Setting aside the scoring from these dated traffic convictions alone would move Mr. Mitchell down a full criminal history category.

However, the calculation is further inflated by the treatment of Mr. Mitchell's 2010 and 2012 cases as separate scoring events, despite the fact that they were ultimately

resolved together and functioned as a single period of punishment. The record reflects that Mr. Mitchell was originally placed on probation in 2010 in case BA368213. While on that probation, he incurred a new case in 2012 (SA079886), and on December 6, 2012, he entered a plea in that matter and was again placed on probation with a custodial component. However, just weeks later, on December 21, 2012, the court addressed both matters together: Mr. Mitchell admitted a probation violation in the earlier case, his probation was revoked, and the court imposed a two-year county jail sentence. At the same time, probation in the 2012 case was terminated as a direct result of that violation.

In practical terms, this sequence of events did not result in two independent punishments, but in a single, consolidated resolution, which could result in the subtraction of one criminal history point under 3553(a). Although the cases originated separately, they ultimately collapsed into one custodial sentence, with the latter case effectively subsumed into the probation revocation on the earlier case, evidenced by the fact that Mr. Mitchell served that time as one continuous period of custody. Assigning separate criminal history points to both cases, which are also quite dated, transforms what was functionally a single episode of sentencing into multiple scoring events, thereby exaggerating both the extent of Mr. Mitchell's criminal conduct and the weight it should carry in assessing his history.

Finally, additional points are derived from conduct that is now more than a decade old and of limited relevance to Mr. Mitchell's present-day risk. For example, the one-point 2013 drug possession case arose from a traffic stop in which Mr. Mitchell was a passenger and officers relied on the odor of marijuana to justify the search. At the time, such enforcement practices were commonplace. Today, however, the legal landscape has fundamentally changed. Following the passage of Proposition 64 in California, the mere odor of marijuana, without more, no longer provides probable cause to search a vehicle, as individuals over the age of 21 may lawfully possess and transport cannabis in limited amounts. See *People v. Johnson*, 50 Cal. App. 5th 620 (2020); Cal. Health & Safety Code § 11362.1. Courts have since recognized that the smell of marijuana alone does not support

6

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

an inference that a vehicle contains contraband or justify a full search. See *People v. Shumake*, 45 Cal. App. 5th Supp. 1 (2019); *People v. Hall*, 57 Cal. App. 5th 946 (2020). Sentencing in 2026 should reflect current legal and societal judgments about the seriousness of prior conduct. See *United States v. Lizarraras-Chacon*, 14 F.4th 961 (9th Cir. 2021). Assigning significant weight to such dated and context-specific conduct risks overstating both culpability and future risk.

When these factors are considered together, it becomes clear that Criminal History Category VI overstates the seriousness of Mr. Mitchell's history and essentially places him alongside defendants whose records involve far more serious, persistent, and dangerous criminal conduct. Under § 3553(a), the Court is not bound to accept that result, and Mr. Mitchell requests that the Court consider sentencing him as more properly in Criminal History Category V.

### B. Mr. Mitchell's Life has been Marked by Trauma and Loss.

Mr. Mitchell's history is marked by significant instability, trauma, and exposure to violence from an early age; these circumstances provide important context for the person he is today. The Presentence Report accurately summarizes the brutality of Mr. Mitchell's early childhood circumstances – circumstances that had understandably had a substantial impact on his development (PSR ¶¶ 97, 99–101.) As a child, Mr. Mitchell looked to his older brother as a father figure. That stability was short-lived. In 2000, his brother was killed in a car accident, a loss that deeply affected Mr. Mitchell and left him without meaningful guidance during a critical period of his life. (*Id*.) In the years that followed, he gravitated toward the streets in search of belonging and structure which led to criminal justice system involvement at a young age. (*Id*. at ¶ 102.)

Despite these challenges, Mr. Mitchell demonstrated promise early in life. He performed well academically, maintained honor roll status, and was an accomplished athlete with aspirations of earning a college basketball scholarship. (*Id*. at ¶ 104.) Those aspirations were derailed after a traumatic incident in which a close friend was shot and

killed while Mr. Mitchell was present in the vehicle. (*Id*. at ¶ 105.) Following that event, he disengaged from school, which temporarily derailed his education. Showing remarkable resilience in the face of extreme trauma and grief, Mr. Mitchell nevertheless made up the credits necessary to graduate high school on time.

Mr. Mitchell later attended Clark Atlanta University, where he attempted to continue his education and pursue basketball. (*Id*. at ¶ 106.) While there, he experienced further trauma. He was shot in the tailbone, resulting in a spinal cord injury that left him with partial paralysis and required extensive rehabilitation. (*Id*.) Several years later, he was shot again, this time in the neck, requiring additional medical treatment and therapy. (*Id*. at ¶ 107.) These events had lasting physical and psychological consequences that have carried forward to recent years (*Id*. at ¶¶ 107–118.)

Mr. Mitchell's adult life has been shaped not only by these devastating events, but also by efforts to build a career and support his family. He became involved in the entertainment industry in 2013, working as a rapper and most recently as a podcaster, where he earned a steady income prior to his arrest. (*Id*. at ¶¶ 109, 129.) He has maintained meaningful relationships with his children and has taken on a central role in their lives, including serving as the primary provider for his household. (*Id*. at ¶¶ 110–111.) His bond with his children, particularly his oldest daughter, is strong, and his absence has had a noticeable emotional impact on them. (*Id*. at ¶ 112.)

Mr. Mitchell has also struggled with long-standing substance abuse, which began at a young age and escalated over time. (*Id*. at ¶¶ 120–125.) His substance use is closely intertwined with his history of physical trauma and mental health challenges, and has often negatively impacted close relationships in his life. Notably, he has expressed a willingness to engage in treatment and has specifically requested participation in substance abuse programming while in custody. (*Id*. at ¶ 126.)

Today, Mr. Mitchell presents not simply as the sum of his past mistakes, but as an individual shaped by hardship, loss, and resilience. He has articulated concrete goals for

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

the future, including continuing his education, building legitimate business ventures, and, most importantly, being present for his children. (*Id*. at ¶ 113.) His history and characteristics reflect both the challenges he has faced and his capacity for change.

### C. Mr. Mitchell's Character is Reflected in Consistent Observations of Those Who Know Him Best.

The letters from Mr. Mitchell's family members consistently describe him as a present, engaged, and deeply committed father whose role in his children's lives is active and ongoing. *See Exhibit A, Letters of Support*. Ebony Brown, the mother of his oldest daughter, writes that he has been "there for her in every way imaginable," including attending "school events, award ceremonies, cheerleading games," and remaining involved in her education, health, and daily life. She further explains that his absence has had a concrete and harmful effect, requiring their daughter to enter therapy due to "depression, grief, and post-traumatic stress from the sudden loss of his daily presence." Kierston Chandler, his wife, similarly describes him as "one of the most loving, caring, and hardworking people" she has known, emphasizing that he is not simply present but engaged "in every moment," whether helping with the children, providing emotional support, or maintaining stability in the household. Ashton Hasson, his sister-in-law, echoes these observations, describing him as a "devoted father of four" who is "always present and engaged," and noting that he consistently prioritizes family, even on occasions such as his own birthday, when he "prioritizes family time." Together, these accounts describe day-to-day parental involvement rather than occasional or symbolic participation.

Other family members and close relatives describe Mr. Mitchell's character from a broader perspective, emphasizing reliability, generosity, and a central focus on family responsibilities. Clinet Burton, his oldest sister, characterizes him as "the protector — calm in spirit, thoughtful in words, and steady in actions," and explains that he is involved "in every part of [his children's] lives — from school activities and homework to daily conversations about respect." Hattie Mitchell recounts that since returning home he "spends his time working and taking care of his family," regularly attending family

9

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

gatherings and demonstrating generosity, including bringing gifts not only for his own children but for others. Tara Duncan, a family friend of over twenty years, describes him as "a hands-on father who shows up consistently" and "the kind of person people can lean on when times get tough," noting his "humility and respect" and that he "puts his family first, no matter the circumstance." His mother, Anna Moore, similarly states that he has "embraced his responsibilities with love and dedication" and describes him as a person of "integrity, kindness, and determination." His cousin, Asiah Collins, adds that she has witnessed "a profound and inspiring transformation," describing him as "a present and loving father" who "proves daily that living an honest life… is achievable." Across these accounts, the consistent focus is on his role within the family as dependable, involved, and responsible.

Letters from colleagues and professional associates describe Mr. Mitchell in structured work environments, emphasizing reliability, professionalism, and sustained effort. Joshua Manheim, who worked with him directly, states that he "approaches his work with dedication and professionalism" and is "a dependable team member and a supportive presence." Andrew Lee, a business executive who has known him for several years, similarly writes that he is "someone who keeps his word," emphasizing that "his family comes first" and that he has built "a real career in entertainment" through "consistent effort and professionalism." Dannie Fite, his manager, provides specific examples of how Mr. Mitchell balances work and family, explaining that even during demanding studio sessions and tours, he would leave to "go and help his daughter with her schoolwork and normal parent duties." William Reaves, who has worked with him for over a decade, describes him as having "shown exemplary behavior when included in a healthy normal business regimen" and as "an extremely intelligent, social and warm young man." These accounts reflect his conduct in environments that require accountability, deadlines, and collaboration with others.

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

Individuals who have known Mr. Mitchell over long periods, including those without close familial ties, describe personal growth and a shift in how he engages with others and his community. Brian Todd Collins Jr. writes that Mr. Mitchell is "a devoted father to his four children" and describes his development as "genuine and inspiring," noting that he now uses his experiences "to uplift others—especially the youth in his community." Ross Lindgren, a journalist who spent time with him and his family, states that he observed "firsthand that he is a devoted father and a positive role model," and describes his reformation as "not superficial—it is rooted in a genuine desire to contribute positively," including using his platform to "educate and uplift." These perspectives describe observable changes over time rather than isolated or recent conduct.

Finally, Alex Alonso, a sociologist and gang expert with decades of experience studying gang behavior and desistance, provides an independent professional assessment based on both expertise and personal observation. He explains that individuals often "age out" of prior affiliations as they assume family and employment responsibilities, and states that Mr. Mitchell appears to be in that stage. Based on his observations, he writes that Mr. Mitchell "does not spend his time on the streets or regularly frequent gang areas," and that "the central focus of his life today is his work and his family." He further notes that in structured settings Mr. Mitchell presents as "thoughtful, articulate, and insightful," reflecting "capacity for judgment, self-regulation, and growth." This assessment directly addresses issues of risk and rehabilitation based on established professional criteria.

3. *To Promote Respect for the Law; to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes.*

A sentence below the advisory guideline range is sufficient to promote respect for the law, provide just punishment, and afford adequate deterrence. A guideline sentence would be greater than necessary to achieve those purposes.

Mr. Mitchell has accepted responsibility at an early stage and acknowledges the seriousness of his conduct. (PSR ¶ 25.) That acceptance reflects an understanding of the

11

*U.S. v. Mitchell*, Defense Sentencing Memorandum

2:25-cr-00132-FLA

law and reduces the need for a lengthy custodial sentence to promote respect for it. Specific deterrence does not require a guideline sentence. Mr. Mitchell's conduct is closely tied to untreated trauma, repeated exposure to violence, and longstanding substance abuse. (*Id*. at ¶¶ 107–118, 120–125.) He has expressed a willingness to engage in treatment, including substance abuse programming while in custody. (*Id*. at ¶ 126.) Addressing those underlying issues is more likely to reduce recidivism than extended incarceration.

General deterrence is satisfied by a meaningful but measured sentence. Federal prosecution and incarceration already convey the seriousness of this conduct. A below-guidelines sentence is also sufficient to protect the public. Mr. Mitchell's record reflects periods of instability rather than continuous, escalating criminal behavior. With appropriate supervision and treatment, he does not present the level of risk associated with the advisory range.

## IV.
## CONCLUSION

For the reasons stated herein, Mr. Mitchell respectfully requests a sentence of 57 months' custody and two years' supervised release.

Respectfully submitted,

DATED: March 23, 2026

*Megan E. Foster*
**MEGAN E. FOSTER**
Law Office of Megan E. Foster, APC
Attorney for Mr. Mitchell

*Zach A. Brooks*
**ZACH A. BROOKS**
Zach Brooks Law, SP
Attorney for Mr. Mitchell

12
*U.S. v. Mitchell*, Defense Sentencing Memorandum
2:25-cr-00132-FLA