Megan E. Foster (SBN 317634)
Law Office of Megan E. Foster, APC
401 W "A" Street, Ste 200
San Diego, CA 92101
Phone: (619) 736-3707
megan.foster.esq@gmail.com

Zach A. Brooks (SBN 346455)
Zach Brooks Law, SP
421 Broadway, Unit 698
San Diego, CA 92101
zbrooks@zachbrookslaw.com

*Attorneys for Defendant Zihirr Mitchell*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**HON. FERNANDO AENLLE-ROCHA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ZIHIRR MITCHELL,<br>Defendant. | Case No.: 2:25-cr-00132-FLA<br>**DEFENDANT'S MOTION FOR SPECIFIC PERFORMANCE OF THE PLEA AGREEMENT AND SENTENCING BEFORE A DIFFERENT DISTRICT COURT JUDGE** |

**TABLE OF AUTHORITIES**

**Cases**

*Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016) .......... 5
*Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978) .......... 4
*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992) .......... 7
*Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003) .......... 4, 8
*Buckley v. Terhune* .......... 4
*Cuero v. Cate*, 850 F.3d 1019, 1022 (9th Cir. 2017) .......... 4, 5, 6
*Doe v. United States Dist. Ct. (In re Doe)*, 57 F.4th 667, 674 (9th Cir. 2023) .......... 4

*In re Doe*, 57 F.4th at 674 ........ 4, 7, 8
*Santobello v. New York*, 404 U.S. 257, 260 (1971) ........ 4
*United States v. Alcala-Sanchez*, 666 F.3d 571, 577 (9th Cir. 2012) ........ 1, 5
*United States v. Arellanes*, 767 F.2d 1353, 1358 (9th Cir. 1985) ........ 8
*United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979) ........ 7
*United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000) ........ 7
*United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) ........ 4
*United States v. Gerace*, 997 F.2d 1293, 1294 (9th Cir. 1993) ........ 7
*United States v. Jackson*, 21 F.4th 1205, 1211 (9th Cir. 2022) ........ 8
*United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000) ........ 4
*United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ........ 6
*United States v. Spear*, No. 12-10124, 2014 WL 2523649 ........ 4
*United States v. Transfiguracion*, 422 F.3d 1222, 1228 (9th Cir. 2006) ........ 4
*Wheeler v. Yarbrough*, 352 F. Supp. 2d 1085, 1089 (C.D. Cal. 2005) ........ 8

**U.S. Code**

18 U.S.C. § 922(g)(1) ........ 1, 2, 3
18 U.S.C. § 924(e) ........ 2

**California Statutes**

California Penal Code § 422(a) ........ 2
CPC § 422(a) ........ 1, 3, 4, 5

**United States Sentencing Guidelines**

U.S.S.G. § 2K2.1 ........ *passim*
U.S.S.G. § 3D1.4 ........ 3, 7, 8
U.S.S.G. §§ 4B1.1 ........ 2
U.S.S.G. §§ 4B1.4 ........ 2

## TABLE OF CONTENTS

I. ISSUE PRESENTED ........ 1

II. STATEMENT OF FACTS ........ 2

A. The Indictment and Plea Agreement ........ 2

B. Pre-Plea Representations by the Government ........ 3

C. The Government's Sentencing Memorandum ........ 4

III. ARGUMENT .......... 5
A. A Plea Agreement Is a Contract That the Government Must Strictly Honor, and Any Ambiguity Is Construed Against the Government. .......... 5
B. The Government Breached the Plea Agreement by Invoking the Carve-Out Provision Based on a Crime of Violence It Already Knew About. .......... 6
C. The Government Breached the Plea Agreement by Applying a Multi-Count Upward Adjustment It Expressly Represented Would Not Apply .......... 7
D. Mr. Mitchell Was Prejudiced by the Government's Breach. .......... 10
E. The Remedy Is Specific Performance Before a Different District Court Judge. 10
IV. CONCLUSION .......... 11

# I. ISSUE PRESENTED.

When the government breaches the literal terms of a plea agreement, the remedy is specific performance before a different district court judge. *United States v. Alcala-Sanchez*, 666 F.3d 571, 577 (9th Cir. 2012). Here, the government and Zihirr Mitchell ("Mr. Mitchell") entered into a plea agreement on August 5, 2025 ("Plea Agreement"), pursuant to which Mr. Mitchell pleaded guilty to one count of being a Felon in Possession of Firearms and Ammunition in violation of 18 U.S.C. § 922(g)(1). In exchange, the government agreed to a specific sentencing framework grounded in agreed-upon Guidelines calculations. The government's own pre-plea representation to defense counsel was that the total offense level would be 19—a Base Offense Level of 20, plus two levels for multiple firearms, minus three for acceptance of responsibility—producing an advisory Guidelines range of approximately 57-71 months (or 63-78 months depending on criminal history category).

The government has now abandoned that framework entirely. In its Sentencing Memorandum filed December 5, 2025, the government adopted Probation's calculation of a total offense level of 23 and a Guidelines range of 92 to 115 months—roughly double what Mr. Mitchell was led to believe he faced when he agreed to plead guilty. The government justifies this reversal by invoking a Plea Agreement provision stating that "defendant's base offense level could be increased if...defendant has additional prior conviction(s) for...a crime of violence..." (Plea Agreement ¶ 12.) But this provision cannot bear the weight the government places on it. The CPC § 422(a) criminal threats conviction that the government now relies upon as a triggering "crime of violence" was known to the government from the very beginning—it appears on the face of the indictment and is explicitly referenced in the Plea Agreement itself. Its existence was never unknown or newly discovered. The government's attempt to invoke the carve-out under these circumstances constitutes a breach of the Plea Agreement, and Mr. Mitchell is entitled to specific performance of its terms before a different district court judge.

## II. STATEMENT OF FACTS.

### A. The Indictment and Plea Agreement.

Mr. Mitchell was charged in a two-count indictment with being a Felon in Possession of Firearms and Ammunition in violation of 18 U.S.C. § 922(g)(1). The indictment expressly listed Mr. Mitchell's prior conviction for Criminal Threats under California Penal Code § 422(a) as one of the predicate felony convictions establishing his status as a prohibited person. (ECF No. 1 at p. 4.) This conviction was therefore known to the government at the outset of the prosecution. What's more, on the date of Mr. Mitchell's arrest, the government also relied on this conviction in its successful motion to detain Mr. Mitchell pretrial at his initial appearance and detention hearing.

On June 30, 2025, the government extended an offer for Mr. Mitchell to plead guilty in this case. Pursuant to the Plea Agreement, Mr. Mitchell would agree to plead guilty to Count Two, Felon in Possession. Count One would be dismissed at sentencing. However, the factual admissions as to an uncharged FEMA fraud count, and guidelines as to the spent shell casings in Count One. Prior to going over the offer with Mr. Mitchell, undersigned counsel sought to clarify the purpose of including these additional factual admissions, and what impact these admissions would have on the ultimate sentencing guideline range. *See Exhibit A, Email Exchange Between Government and Defense Counsel*.

Based on the government's representations about the ultimate base offense level and the purpose of the additional guidelines, on August 5, 2025, Mr. Mitchell ultimately agreed to sign the Plea Agreement as written, saving the government and this Court prosecutorial and court-related resources, while also agreeing to a blanket appellate waiver. Pursuant to the Plea Agreement, Mr. Mitchell agreed to plead guilty to Count Two of the indictment—Felon in Possession of Firearms and Ammunition—and to admit to certain additional relevant conduct including the alleged FEMA fraud. In exchange, the government agreed,

among other things, not to further prosecute Mr. Mitchell for the fraud conduct and to abide by the sentencing calculations set forth in the Plea Agreement. (Plea Agreement ¶¶ 4, 12.)

Paragraph 12 of the Plea Agreement set forth the parties' agreed Sentencing Guidelines calculations across three categories of conduct: (1) "Spent Shell Casings," with a Base Offense Level of 14 under U.S.S.G. § 2K2.1(a)(6)(A) and a +4 enhancement for connection with another felony; (2) "Search of Residence," with a Base Offense Level of 20 under U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) and a +2 enhancement for multiple firearms; and (3) "FEMA Application," with a Base Offense Level of 7 and a +2 (or up to +12) disaster fraud enhancement. (Plea Agreement ¶ 12.)

Paragraph 12 also contained a carve-out providing that the agreed-upon base offense levels could be altered if "defendant's base offense level [is] increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2 or an armed career criminal under U.S.S.G. §§ 4B1.4 and 18 U.S.C. § 924(e), or if defendant has **additional** prior conviction(s) for either a crime of violence or a controlled substance offense under U.S.S.G. § 2K2.1." (emphasis added) (Plea Agreement ¶ 12.) The critical word is "additional"—meaning a conviction not already known and accounted for by the parties at the time they struck the deal.

**B. Pre-Plea Representations by the Government.**

Prior to Mr. Mitchell's execution of the Plea Agreement, defense counsel sought clarity from the government about how the sentencing calculations in the Plea Agreement would function—specifically, how the various categories of conduct would group for Guidelines purposes, and what the ultimate total offense level would be. On July 17, 2025, AUSA Jena MacCabe responded by email with the government's analysis:

> *"If I'm doing the grouping rules correctly, I think the Court will use 22 as the offense level, and there won't be an upward adjustment for multiple counts because the other counts are too low. With acceptance of responsibility, that would mean the total offense level is 19. But yes, the Court will be able to consider the other conduct generally at sentencing. The reason why we wanted to include it in this case is because if he is going to accept*

*responsibility, we would rather not have to file a new indictment against him for anything fraud related."*

Defense counsel relied on this representation in counseling Mr. Mitchell to accept the Plea Agreement. Based on the government's analysis, Mr. Mitchell understood that his total offense level would be 19, resulting in a Guidelines range of approximately 57-71 months at Criminal History Category V or 63-78 months at Criminal History Category VI.[1] He thought he was pleading guilty to a sole count, that the remaining count would be dismissed at sentencing as part of a charge bargain, and he agreed to admit to the additional fraud conduct in a show of good faith and fair dealing. He did not understand nor contemplate that he was unknowingly pleading guilty to *three counts* (one completely uncharged), nor that he was agreeing to a calculation that could result in a Guidelines range of 92 to 115 months, and had that been the case, he would not have agreed to plead guilty in the first place.

**C. The Government's Sentencing Memorandum.**

On December 5, 2025, the government filed its Sentencing Memorandum adopting the USPO's calculation of a total offense level of 23 and a Guidelines range of 92 to 115 months. (Gov. Sent. Memo. at 1.) The government arrived at this calculation by using a Base Offense Level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) on the ground that Mr. Mitchell "had been convicted of a crime of violence before committing each of those crimes," specifically the CPC § 422(a) criminal threats conviction. (Gov. Sent. Memo. at 2-3.) The government also applied a +2 multi-count adjustment under U.S.S.G. § 3D1.4—directly contrary to its own pre-plea representation that no such upward adjustment would apply.

In a footnote in its Memorandum, the government asserted: "Neither party is bound to the base offense levels listed in the plea agreement for the 18 U.S.C. § 922(g)(1) counts because defendant's base offense level was altered by a prior conviction for a crime of violence." (Gov. Sent. Memo. at 3 n.2.) But the CPC § 422(a) conviction—the same

[1] Mr. Mitchell adopts and incorporates by reference the arguments regarding the proper calculation of his criminal history score as set forth in his Sentencing Memorandum.

conviction now cited as a "crime of violence"—was listed in the indictment, discussed at the detention hearing in the Pretrial Services report, and expressly referenced on page 10 of the Plea Agreement itself. The government knew about this conviction at inception. It is not new. It is not additional. The carve-out provision simply does not apply.[2]

## III. ARGUMENT.

### A. A Plea Agreement Is a Contract That the Government Must Strictly Honor, and Any Ambiguity Is Construed Against the Government.

A plea agreement is a contract, and the government must strictly comply with its literal terms. *Alcala-Sanchez*, 666 F.3d at 575 (citing *United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000); *Santobello v. New York*, 404 U.S. 257, 260 (1971)). The Supreme Court has long held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262; see also *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978). A defendant has a "due process right to enforce the terms of his plea agreement." *Cuero v. Cate*, 850 F.3d 1019, 1022 (9th Cir. 2017) (Wardlaw, J., concurring in denial of rehearing en banc) (citing *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc)).

Plea agreements are interpreted under contract law principles, and ambiguities are construed in favor of the defendant. *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002); *Doe v. United States Dist. Ct. (In re Doe)*, 57 F.4th 667, 674 (9th Cir. 2023). When a plea agreement term is not clear on its face, the court examines the facts of the case to ascertain the parties' reasonable understanding—and if ambiguity remains after that inquiry, it is resolved in the defendant's favor. *In re Doe*, 57 F.4th at 674; *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003). Any ambiguity in a plea agreement is construed

---

[2] Undersigned counsel attempted to meet and confer via email on this issue on March 23, 2026. *See Exhibit B, Meet and Confer Email*. Government counsel has not responded as of this writing, and this Motion follows.

against the government as the drafter. *United States v. Spear*, No. 12-10124, 2014 WL 2523649, at *2 (9th Cir. 2014) (citing *United States v. Transfiguracion*, 422 F.3d 1222, 1228 (9th Cir. 2006)).

In *Alcala-Sanchez*, the Ninth Circuit held that when the government deviates from its agreed-upon sentencing calculations—even inadvertently, and even when it later attempts to walk back the deviation—it has breached the plea agreement and the defendant has lost the benefit of his bargain. 666 F.3d at 575-76. The breach is not cured by later mitigation, because "one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge." *Id*. at 577 (citing *Santobello*, 404 U.S. at 262). "To excuse plea agreement breaches in light of later attempted mitigation would lessen the government's duty of strict compliance." *Id*. Here, the breach is not inadvertent, and the government has heretofore made no effort to walk back or justify the deviation.

**B. The Government Breached the Plea Agreement by Invoking the Carve-Out Provision Based on a Crime of Violence It Already Knew About.**

The Plea Agreement's carve-out provision releases the parties from the agreed Base Offense Levels if the defendant has "additional prior conviction(s) for [ ] a crime of violence." (Plea Agreement ¶ 12.) This provision plainly contemplates a situation where new criminal history information comes to light after the agreement is struck (presumably after Probation completes its criminal history investigation) that was not previously known and not previously accounted for in the agreed calculations. The word "additional" has meaning: it signals convictions beyond what was already known to both parties at the time of contracting.

Here, the CPC § 422(a) criminal threats conviction is not "additional" in any meaningful sense. It appears in the indictment itself as one of the predicate felony convictions making Mr. Mitchell a prohibited person. It was discussed in the Pretrial Services report at the detention hearing. It is expressly listed in the Plea Agreement on page

10 (lines 15-17) as one of Mr. Mitchell's prior felony convictions. And curiously, the government notes that it is a *per se* crime of violence in its sentencing papers in arriving at its new justification for a 92-month sentence for Mr. Mitchell. Yet, the government was fully aware of this conviction—and of the Ninth Circuit's holding that a CPC § 422(a) conviction is categorically a crime of violence, see *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016)—at the time it drafted and signed the Plea Agreement.

*Cuero v. Cate* is directly on point. There, the prosecution sought to amend a complaint after a guilty plea to add a strike prior that it was "previously aware of" but "did not initially notice" qualified as such. *Cuero*, 850 F.3d at 1021 (Wardlaw, J., concurring). This violated the defendant's due process right to enforce the terms of his plea agreement. *Id*. at 1021-22. Crucially, the concurrence emphasized that the government "had access to accurate and adequate information about [the defendant's] prior convictions at the time of the original plea agreement and merely neglected to reflect his full criminal history" in a way consistent with its obligations. *Id*. at 1025-26. That is precisely this case. Whether the government was not aware the PC 422(a) conviction was a per se crime of violence at the inception of the case, it should have known, and it certainly should not be now allowed to use its ignorance of what qualifies as a crime of violence to essentially double the guideline range Mr. Mitchell believed he contracted for post hoc.

Notably, as the *Cuero* concurrence further explained, prosecutors wishing to protect themselves against the consequence of a later-recognized prior conviction "can and do" draft "contractual provisions" to minimize that risk. *Id*. at 1025. "[T]he original plea agreement could have provided that if the state later learned that one of the charged priors qualified as a strike, the court could treat it as such for sentencing purposes." *Id*. The government did not do so here. Having failed to draft a provision expressly covering *known* convictions, it cannot now claim a carve-out it never bargained for. The government is entitled to receive "what it bargains for but nothing more." *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).

There is also a textual alternative that underscores the overreach of the government's position. The Base Offense Level of 20 agreed to in the Plea Agreement is defensible under two separate Guidelines subsections: U.S.S.G. § 2K2.1(a)(4)(A) (prior crime of violence) and U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) (felon in possession). The Plea Agreement cited the latter. Even if the government now prefers to cite the former, the resulting Base Offense Level is the same: 20. A subsection shift that produces no change in the agreed number cannot trigger a carve-out that was designed to address materially new information.

**C. The Government Breached the Plea Agreement by Applying a Multi-Count Upward Adjustment It Expressly Represented Would Not Apply.**

The government's pre-plea representation to defense counsel was unambiguous: "I think the Court will use 22 as the offense level, and there won't be an upward adjustment for multiple counts because the other counts are too low." That statement was made by an AUSA in direct response to a question about how the Plea Agreement's Guidelines calculations would function. Defense counsel relied on it. Mr. Mitchell therefore relied on it. It was part of the inducement that led him to plead guilty, and under *Santobello*, a prosecutorial promise that "rests in any significant degree" as "part of the inducement or consideration" of a guilty plea "must be fulfilled." 404 U.S. at 262; see also *Cuero*, 850 F.3d at 1022 (Wardlaw, J., concurring); *United States v. Arnett*, 628 F.2d 1162, 1164 (9th Cir. 1979).

The government's Sentencing Memorandum now recommends a +2 multi-count adjustment under U.S.S.G. § 3D1.4, inflating the total offense level to 23—the opposite of what it told defense counsel. Whether or not the government's current calculation is technically permissible under the Guidelines, the question on a breach claim is whether the government honored the representations that induced the defendant to plead guilty, not whether it could theoretically justify a higher number. *Alcala-Sanchez*, 666 F.3d at 575.

The additional counts included in the Plea Agreement—the spent shell casings and the FEMA fraud conduct—were included not to establish separately grouped offenses carrying a multi-count enhancement, but as sentencing factors and relevant conduct for the

Court's general consideration. Or that was the government's express representation to defense counsel on July 17, anyway: "The reason why we wanted to include it in this case is because if he is going to accept responsibility, we would rather not have to file a new indictment against him for anything fraud related." The intent was to capture relevant conduct without triggering an upward grouping adjustment. Mr. Mitchell conferred a significant benefit upon the government in admitting to this conduct that was not even initially charged. It cannot now re-characterize those admissions as independent grouped offenses warranting a multi-count enhancement.

The government may argue that Paragraph 28's integration clause—stating there are "no promises, understandings, or agreements" beyond those contained in the written agreement—bars consideration of the July 17 email. That argument fails for two independent reasons.

First, the parol evidence rule bars extrinsic evidence offered to add new terms to a fully integrated agreement—it does not bar extrinsic evidence offered to resolve an ambiguity in an existing term. *In re Doe*, 57 F.4th at 674; *United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000); *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992). The question of how the Plea Agreement's multiple categories of conduct would group under U.S.S.G. § 3D1.4—and whether a multi-count upward adjustment would result—is not a new term imported from outside the agreement. It is a question of what the grouping provisions already in the agreement mean. The July 17 email does not add a promise; it clarifies how both parties understood the agreement's existing sentencing framework to operate *prior to Mr. Mitchell executing the plea agreement*. That is precisely the type of extrinsic evidence courts may consider notwithstanding an integration clause. *Id*.

Second, even if the grouping question were treated as ambiguous rather than clarified by the email, that ambiguity must be resolved in Mr. Mitchell's favor. *In re Doe*, 57 F.4th at 674; *Brown v. Poole*, 337 F.3d at 1161; *Wheeler v. Yarbrough*, 352 F. Supp. 2d

1085, 1089 (C.D. Cal. 2005). The Ninth Circuit has "steadfastly applied the rule that any lack of clarity in a plea agreement should be construed against the government as the drafter." *Spear*, 2014 WL 2523649, at *2.

**D. Mr. Mitchell Was Prejudiced by the Government's Breach.**

The government's breach has materially prejudiced Mr. Mitchell. He entered into the Plea Agreement understanding that his Guidelines range would be approximately 57-71 or (at worst) 63-78 months. The government now seeks 92 months—more than 30 months above the top of the range he understood he faced, and roughly double the low end. That prejudice is compounded by the fact that Mr. Mitchell waived his constitutional trial rights, agreed to factual admissions regarding the FEMA fraud conduct, and saved the government the time and resources of a new indictment—all in reliance on a deal the government has since abandoned. *United States v. Jackson*, 21 F.4th 1205, 1211 (9th Cir. 2022) (defendant must demonstrate plea rested in significant degree on the promise in question); *Alcala-Sanchez*, 666 F.3d at 575-76.

The appellate waiver only deepens the significance of the prejudice to Mr. Mitchell. Under Paragraph 17 of the Plea Agreement, Mr. Mitchell gave up the right to appeal any sentence within the statutory maximum. By dramatically inflating the recommended Guidelines range, the government has effectively expanded the practical scope of that waiver far beyond what Mr. Mitchell understood when he signed. This is the same prejudice the Ninth Circuit recognized in *Alcala-Sanchez*, where the government's deviation from agreed calculations deprived the defendant of the "presentation of a 'unified front' to the court" and compromised the appellate protections he understood himself to retain. 666 F.3d at 575-76.

**E. The Remedy Is Specific Performance Before a Different District Court Judge.**

Where the government breaches a plea agreement, the defendant is entitled to specific performance before a different district court judge. *Alcala-Sanchez*, 666 F.3d at 577; *Santobello*, 404 U.S. at 262-63; *Mondragon*, 228 F.3d at 981. Reassignment is

required because "one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge," and excusing the breach would "lessen the government's duty of strict compliance." *Alcala-Sanchez*, 666 F.3d at 577.

*Cuero* confirms this principle in the specific context of plea agreements induced by prosecutorial promises. As the concurrence explained, "[w]here a plea agreement is breached, the purpose of the remedy is, to the extent possible, to repair the harm caused by the breach." *Cuero*, 850 F.3d at 1024-25 (Wardlaw, J., concurring) (citation omitted). Specific performance "will implement the reasonable expectations of the parties" and is appropriate where "there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor's breach." *Id*. at 1025 (citations omitted). Permitting the government to achieve through breach "the precise outcome it sought" is not an available remedy. *Id*. Where, as here, "permitting [the defendant] to withdraw his guilty plea" would only "allow[] the prosecution to achieve the precise outcome it sought in breaching the plea agreement," specific performance before a different judge is the only remedy that makes Mr. Mitchell whole. *Id*. Mr. Mitchell does not wish to withdraw his plea agreement – he simply wants specific performance of the contract he entered into.

Here, this Court has been exposed to the government's Sentencing Memorandum and its breaching Guidelines calculations. Specific performance of the Plea Agreement—with the government bound to a Base Offense Level of 22, no multi-count upward adjustment, and a -3 acceptance of responsibility reduction, yielding a total offense level of 19—must occur before a judge who has not been exposed to the government's breaching conduct.

## IV. CONCLUSION

The government breached the Plea Agreement in two independent respects: (1) it invoked the carve-out provision to escape the agreed-upon Base Offense Level based on a crime of violence it indisputably knew about when it indicted the case and later drafted the

agreement; and (2) it recommended a multi-count upward adjustment directly contrary to its own pre-plea representation that no such adjustment would apply. These breaches deprived Mr. Mitchell of the benefit of his bargain and nearly doubled his sentencing exposure. Under *Santobello*, *Alcala-Sanchez*, *Cuero*, *Franco-Lopez*, and *In re Doe*, the remedy is specific performance of the Plea Agreement's terms before a different district court judge.

Mr. Mitchell respectfully requests that this Court find that the government has breached the Plea Agreement and reassign this matter to a different district court judge for resentencing in accordance with the terms the parties actually agreed to: a total offense level of 19, with the government bound to recommend accordingly.

Respectfully submitted,

DATED: March 26, 2026

*Megan E. Foster*
**MEGAN E. FOSTER**
Law Office of Megan E. Foster, APC
Attorney for Mr. Mitchell

*Zach A. Brooks*
**ZACH A. BROOKS**
Zach Brooks Law, SP
Attorney for Mr. Mitchell