TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
KEVIN J. BUTLER (Cal. Bar No. 329129)
Chief, Major Crimes Section
JENA A. MACCABE (Cal. Bar No. 316637)
Deputy Chief, Major Crimes Section
Assistant United States Attorneys
1300 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6495/5046
Facsimile: (213) 894-0141
E-mail: kevin.butler2@usdoj.gov
jena.maccabe@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ZIHIRR MITCHELL,
aka "Bricc Baby,"
aka "Big Shitty,"
aka "MPA Shitro,"
aka "Shitty Montana,"
aka "Bricc Baby Shitro,"

Defendant.

No. CR 25-132-FLA

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR SPECIFIC PERFORMANCE (DKT. 39) AND SUPPLEMENT (DKT. 41)

Hearing Date: 1:30 p.m.
Hearing Time: June 26, 2026
Location: Courtroom of the Hon. Fernando L. Aenlle-Rocha

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys Kevin J. Butler and Jena A. MacCabe, hereby files its opposition to defendant Zihirr Mitchell's motion for specific performance (Dkt. 39) and supplement to that motion (Dkt. 41).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 11, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/

KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION PAGE


TABLE OF AUTHORITIES....................................................i

MEMORANDUM OF POINTS AND AUTHORITIES................................1

I. INTRODUCTION.........................................................1

II. STATEMENT OF FACTS..................................................3

III. LEGAL STANDARD.....................................................6

IV. ARGUMENT............................................................7

A. The Government Did Not Breach the Plea Agreement..........7

1. The Carve-Out Applies to All Stated BOLs............10

2. The Plea Agreement Is the Signed Filing, Not an Email......................................12

3. Both Analytical Paths Yield a Total Offense Level of 23.......................................15

B. Defendant's Motion Fails without the Requisite Prejudice Showing......................................16

V. CONCLUSION...........................................................18

**TABLE OF AUTHORITIES**

DESCRIPTION PAGE

**Cases**

Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc., 971 F.2d 272 (9th Cir. 1992) .......... 14

Cuero v. Cate, 827 F.3d 879 (9th Cir. 2016) .......... 9

Cuero v. Cate, 850 F.3d 1019 (9th Cir. 2017) .......... 1, 8

Doe v. United States Dist. Ct. (In re Doe), 57 F.4th 667 (9th Cir. 2023) .......... 7, 14

Kernan v. Cuero, 583 U.S. 1 (2017) .......... 9

Santobello v. New York, 404 U.S. 257 (1971) .......... 6, 16

United States v. Alcala-Sanchez, 666 F.3d 571 (9th Cir. 2012) .......... 6

Untied States v. Benchimol, 471 U.S. 453 (1985) .......... 12

United States v. Carty, 520 F.3d 984 (9th Cir. 2008) .......... 2

United States v. Clark, 218 F.3d 1092 (9th Cir. 2000) .......... 8, 11

United States v. Coffman, 2017 WL 4883280 (E.D. Cal. Oct. 30, 2017) .......... 13

United States v. Franco-Lopez, 312 F.3d 984 (9th Cir. 2002) .......... 6

United States v. Gomez, 165 F.4th 1199 (9th Cir. 2026) .......... 1

United States v. Jackson, 21 F.4th 1205 (9th Cir. 2022) .......... 7, 16

United States v. Movsesyan, 2018 WL 3014140 (E.D. Cal. June 14, 2018) .......... 13

United States v. Pruitt,
32 F.3d 431 (9th Cir. 1994) .................................... 7

**Statutes**

18 U.S.C. § 922(g) .............................................. 2, 3

26 U.S.C. § 5845(a) ............................................. 6, 7

**Rules**

U.S.S.G. § 2K2.1 ............................................. passim

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Zihirr Mitchell ("defendant") asks this Court to find that the government breached the Plea Agreement and to reassign this matter to a different district court judge for sentencing. This motion should be denied. The government has not breached the Plea Agreement, which explicitly and expressly contemplates the very scenario at issue.

Defendant's motion rests on two theories. First, he contends that the government improperly invoked Paragraph 12's carve-out provision based on a prior crime of violence -- California Penal Code ("CPC") § 422(a) -- that was known to the government (and defendant)[1] at the time of contracting. Second, he argues that an email from government counsel estimating that no multi-count adjustment would apply constitutes a binding pre-plea promise that obligates the government to stand by an *estimated* base offense level ("BOL"), separate and apart from the multi-count adjustment. Both theories fail.

As to the carve-out: the plain text of Paragraph 12 reserves the right to alter the BOL if defendant has "additional prior

---

[1] Indeed, defendant's multiple filings seem to take government counsel to task for not contemplating that his conviction was a crime of violence, repeatedly asserting that it is per se a crime of violence (of course, ignoring that crimes that were once unquestionably crimes of violence subsequently lost that status, see, e.g., United States v. Gomez, 165 F.4th 1199, 1210 (9th Cir. 2026) (en banc)). But defendant and his counsel were equally aware of the conviction. So, if it wasn't clear to defendant and his counsel the significance of the conviction, how can defendant now assert a breach based on the same misapprehension? As defendant's own cited case explains: "**Neither party** to a binding plea agreement is permitted to renege on that agreement because he may have entered it on the wrong assumptions." Cuero v. Cate, 850 F.3d 1019, 1025 (9th Cir. 2017) (Wardlaw, J., concurring) (emphasis added).

conviction(s) for . . . a crime of violence." Nothing in that text limits the provision to "previously unknown" convictions -- a gloss defendant imports from nowhere. The CPC § 422(a) conviction is "additional" in the sense that it was not the basis for the stated offense level calculation, which was structured under U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I), a subsection that does not require a prior crime of violence but results in the same BOL. Defendant's strained reading would render the carve-out provision a nullity in virtually every case.

As to grouping and the multi-count adjustment: the two 18 U.S.C. § 922(g) counts in his indictment and factual basis group into a single group under U.S.S.G. § 3D1.2(d), which expressly lists § 2K2.1 as a Guideline subject to mandatory grouping.[2] Because the FEMA fraud count is more than nine levels below the § 922(g) group under anyone's calculation, it is disregarded and contributes zero units under § 3D1.4. No multi-count upward adjustment thus applies. This does not, however, reduce the offense level. Under U.S.S.G. § 3D1.3(b), the grouped offense level is the aggregate of all applicable specific offense characteristics from the combined relevant conduct. In Paragraph 12, defendant agreed to a BOL of 20 for his "Search of Residence" § 922(g) conduct and a +2 multiple-firearms enhancement for that count; he also agreed to a +4 connection-with-another-felony enhancement for his "Spent Shell Casings" § 922(g) conduct. The 20-level BOL and both enhancements

[2] As discussed further below, both the Probation Office and the parties missed this grouping rule in the sentencing filings. Nevertheless, courts must calculate the Guidelines correctly. United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (en banc). Even if the Court uses the Guidelines stated in Plea Agreement, the same total offense level results from this grouping.

are part of the § 922(g) grouped relevant conduct. The arithmetic: 20 + 4 + 2 = 26 (i.e., Paragraph 12), minus 3 for acceptance of responsibility (i.e., Paragraph 4), equals a total offense level of 23 -- the same figure the Probation Office reached through its separate-group analysis in the Presentence Report ("PSR"). Ultimately, the carve-out dispute is academic: under the Plea Agreement's stated BOLs without any carve-out, § 3D1.3(b) produces the same total offense level: 23.

For these reasons, the motion should be denied.

## II. STATEMENT OF FACTS

On June 30, 2025, the government extended a plea offer to defendant. Pursuant to the Plea Agreement, defendant agreed to plead guilty to Count Two -- Felon in Possession of Firearms and Ammunition in violation of 18 U.S.C. § 922(g)(1) -- and to admit to certain additional relevant conduct, including his Count One conduct and uncharged FEMA fraud. (Plea Agreement ¶ 2, Dkt. 26.) In exchange, the government agreed, among other things, to move to dismiss Count One at sentencing and not to further prosecute defendant for the fraud-related conduct. (Id. ¶ 4.) The government did not agree, however, to recommend any particular sentence.

Paragraph 12 of the Plea Agreement set forth the parties' Guidelines calculations across three categories of conduct: (1) "Spent Shell Casings," with a BOL of 14 under U.S.S.G. § 2K2.1(a)(6)(A) and a +4 enhancement for connection with another felony; (2) "Search of Residence," with a BOL of 20 under U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I) and a +2 enhancement for multiple firearms; and (3) "FEMA Application," with a BOL of 7 and a +2 (or up to +12) disaster fraud enhancement. (Id. ¶ 12.)

Paragraph 12 further provided that "Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate." (Id.) Paragraph 12 also contained a carve-out stating that the BOL "could be increased if defendant is a career offender . . . or an armed career criminal . . . or if defendant has additional prior conviction(s) for either a crime of violence or a controlled substance offense under U.S.S.G. § 2K2.1," and that "[i]f defendant's base offense level is so altered, defendant and the USAO will not be bound by the base offense level agreed to above." (Id.)

Prior to defendant's execution of the Plea Agreement, defense counsel inquired by email about how the various categories of conduct would group for Guidelines purposes. On July 17, 2025, government counsel responded with the following estimate:

> If I'm doing the grouping rules correctly, I think the Court will use 22 as the offense level, and there won't be an upward adjustment for multiple counts because the other counts are too low.[3] With acceptance of responsibility, that would mean the total offense level is 19. But yes, the Court will be able to consider the other conduct generally at sentencing. The reason why we wanted to include it in this case is because if he is going to accept responsibility, we would rather not have to file a new indictment against him for anything fraud related.

(Def. Mot., Ex. A, Dkt. 39-1.) In that same email, she stated:

> **We have no objection to you getting a pre-plea report,** although unfortunately I have no idea how long that usually takes to get back. Looking at one example from another recent case though, the Court granted the request for one

[3] The upward-adjustment-for-multiple-counts prediction has now proven correct. 22 as the offense level that AUSA MacCabe thought of based on not "doing the grouping rules correctly" missed the +4 for the connection-with-another-felony enhancement that was expressly included in Paragraph 12 of the Plea Agreement.

> on May 6,and we got it on June 16, if that helps. **I agree that I don't think he's a career offender. We just have to include that in the plea agreement so that he's advised his Guidelines theoretically could differ in that situation.**

(Id. (emphasis added).) This email was sent before defendant signed the Plea Agreement. He never requested a pre-plea report.

Defendant signed the Plea Agreement on August 5, 2025. The agreement contained an integration clause at Paragraph 28 providing that "except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney." (Plea Agreement ¶ 28.) Defendant also acknowledged at Paragraph 27 that "no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum." (Id. ¶ 27.)

In its Sentencing Memorandum filed December 5, 2025, the government adopted the Probation Office's calculation of a BOL of 20 under U.S.S.G. § 2K2.1(a)(4)(A), based on defendant's CPC § 422(a) criminal threats conviction as a prior crime of violence, plus a +2 multi-count adjustment under U.S.S.G. § 3D1.4, among its other calculations, yielding a total offense level of 23 after acceptance of responsibility. (Gov.'s Sentencing Mem., Dkt. 32.) Upon further review, the government notes that the two § 922(g) counts should be grouped under § 3D1.2(d), rather than produce a +2 multi-count adjustment. In any event, the resulting total offense level is 23 -- the same as the PSR calculated but through a different analytical path. Below is a chart of the possible calculations:

| | Guidelines Calculations Expressly Listed in Plea Agreement | Guidelines Calculations Based on Prior Crime of Violence |
|---|---|---|
| Highest Base Offense Level | **20**[4] | **20**[5] |
| Multiple Firearms | +2 | +2 |
| Connection with Another Felony | +4 | +4 |
| Acceptance of Responsibility | -3 | -3 |
| Total Offense Level | 23 | 23 |

## III. LEGAL STANDARD

A plea agreement is a contract, and the government must comply with its terms. United States v. Alcala-Sanchez, 666 F.3d 571, 575 (9th Cir. 2012); see also Santobello v. New York, 404 U.S. 257, 260 (1971). But the government's obligations extend only to the terms it actually undertook. Plea agreements are interpreted under contract law, with the court examining the parties' reasonable understanding of the agreement's terms. United States v. Franco-Lopez, 312 F.3d 984, 989 (9th Cir. 2002). Ambiguities are resolved in favor of the defendant, but only after the court has determined that an ambiguity

---

[4] 20 is the BOL for prohibited persons who possess a semiautomatic firearm that is capable of accepting a large capacity magazine or a firearm that is described in 26 U.S.C. § 5845(a). U.S.S.G. § 2K2.1(a)(4)(B)(ii)(I).

[5] 20 is also the BOL for a prior crime of violence. U.S.S.G. § 2K2.1(a)(4)(A).

actually exists. Doe v. United States Dist. Ct. (In re Doe), 57 F.4th 667, 674 (9th Cir. 2023).

The government must honor only what it "bargain[ed] for" -- nothing less, but nothing more. United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994). A defendant claiming breach bears the burden of demonstrating (1) that the government made a specific promise, (2) that the government breached that promise, and (3) that the defendant was prejudiced by the breach. United States v. Jackson, 21 F.4th 1205, 1211 (9th Cir. 2022).

## IV. ARGUMENT

### A. The Government Did Not Breach the Plea Agreement

Defendant contends that the government improperly invoked the Paragraph 12 carve-out because the CPC § 422(a) conviction was "known" to the government at the time of contracting, and therefore cannot be "additional." This argument imports a limitation that the agreement's unambiguous text simply does not contain.

The carve-out provides that the BOL could be modified "if defendant has additional prior conviction(s) for either a crime of violence . . . under U.S.S.G. § 2K2.1." The operative word is "additional" -- but in context, it modifies "prior conviction(s) . . . under U.S.S.G. § 2K2.1." In other words, the phrase asks whether there are convictions -- additional to the existing Guidelines' § 2K2.1 framework -- which would then alter the applicable offense level. The answer here is yes.

The stated BOL of 20 for "Search of Residence" was expressly grounded in § 2K2.1(a)(4)(B)(ii)(I), a subsection applicable to a prohibited person who possesses a semiautomatic firearm capable of accepting a large capacity magazine or a firearm described in 26

U.S.C. § 5845(a) -- a provision that does not require or depend upon a prior crime of violence.[6] Likewise, the stated BOL of 14 for "Spent Shell Casings" was tied to § 2K2.1(a)(6)(A), which applies to prohibited persons generally, without reference to crimes of violence. The CPC § 422(a) criminal threats conviction is, therefore, "additional" in the precise sense contemplated by the carve-out: it is an additional basis under § 2K2.1 that, when applied, alters the applicable subsection from both § 2K2.1(a)(4)(B)(ii)(I) for Count Two and § 2K2.1(a)(6)(A) for Count One to § 2K2.1(a)(4)(A).

Defendant's strained interpretation of "additional" in the Plea Agreement as amounting to "previously unknown," however, is both textually unsupported and practically unworkable. Under defendant's interpretation, the carve-out could never be invoked in a typical case, because prosecutors generally have access to a defendant's criminal history before charging, even before plea negotiations conclude, particularly when criminal history is a necessary element to the charge. Reading "additional" to mean "not previously known to the government" would render the carve-out a nullity -- a result courts are required to avoid. See United States v. Clark, 218 F.3d 1092, 1095 (9th Cir. 2000) (courts interpret contracts to give effect to all terms).

Defendant relies primarily on Cuero, 850 F.3d 1019, but ignores

---

[6] As discussed further below, because the crime-of-violence subsection also carries a BOL of 20, the Guidelines calculations for Count Two are unchanged irrespective of defendant's argument. See U.S.S.G. § 2K2.1(a)(4)(A). Accordingly, defendant's complaint focuses on Count One, which only arises because Count One is a pseudo count (i.e., pseudo "Count 2B" in the PSR) -- despite defendant's argument to the contrary.

that his citations are to a concurrence to denying en banc rehearing. More striking, though, is that defendant ignores that the case was reversed and remanded by the Supreme Court. See Kernan v. Cuero, 583 U.S. 1 (2017). In so doing, the Supreme Court noted that there was no "clearly established federal law" requiring specific performance under the circumstances present in the case. Id. at 7.

Cuero is also distinguishable. In Cuero, the prosecution sought to amend a complaint after the defendant had already entered a guilty plea, adding a strike prior that fundamentally altered the defendant's sentence. See Cuero v. Cate, 827 F.3d 879, 883 (9th Cir. 2016), cert. granted, judgment rev'd sub nom. Kernan, 583 U.S. 1. Here, there is no post-plea amendment. The government presented its Guidelines analysis to the Court in its sentencing memorandum, as it was required to do. That is precisely what Paragraph 26 of the Plea Agreement expressly permitted: both parties were "free to . . . supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court" and to "correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations." (Plea Agreement ¶ 26.)

And, to be clear, in Cuero, the defendant was "**guaranteed**" a "maximum sentence of 14 years, 4 months in prison, and 4 years of parole, as explained both in the written plea agreement . . . and during the plea colloquy." Cuero, 827 F.3d at 882 (emphasis added). The addition of the strike then resulted in an "indeterminate 64 years to life sentence." Id. No such statutory maximum increase occurred here in any form.

1. The Carve-Out Applies to All Stated BOLs

In his supplemental filing, defendant's core contention appears to be that the government made a deliberate, knowing choice to use § 2K2.1(a)(6)(A) (BOL 14) for Spent Shell Casings rather than § 2K2.1(a)(4)(A) (BOL 20), and therefore cannot invoke the carve-out to undo that particular number. But this fails for two reasons.

First, the carve-out by its plain terms is not subsection-specific. It states that if defendant "has additional prior conviction(s) for . . . a crime of violence," and the BOL "is so altered," then "defendant and the USAO will not be bound by the base offense level agreed to above." (Plea Agreement ¶ 12.) The phrase "the base offense level agreed to above" is unmodified -- it refers to all three BOLs set forth in Paragraph 12. The carve-out does not say "the government is not bound only as to the Search of Residence calculation" or "only as to calculations the government made inadvertently." When the trigger condition is met -- an additional crime of violence that alters the applicable BOL -- the parties' agreement as to whichever BOL is altered is released. Defendant's effort to read selectivity into that clause has no textual support.

Second, the "deliberate choice" argument proves too much and is internally self-defeating. Defendant argues that because the government consciously chose § 2K2.1(a)(6)(A) for Spent Shell Casings, it is locked into that number. But by the exact same logic, because the government consciously chose § 2K2.1(a)(4)(B)(ii)(I) for Search of Residence, it would also be locked into that number -- even if the carve-out were triggered. Under defendant's theory, deliberateness in drafting precludes the carve-out from operating on any agreed calculation. That construction renders the carve-out

entirely meaningless, which courts must avoid. See Clark, 218 F.3d at 1095. If the carve-out has any force, it must operate on the stated calculations even when those calculations reflected a conscious choice at the time of drafting.

The supplement's real argument is that using § 2K2.1(a)(6)(A) for Spent Shell Casings was the government's offer and defendant's consideration -- i.e., that he bargained specifically for the lower subsection. But the Plea Agreement contains no such specific promise. Paragraph 12 sets out a calculation grounded in information then known to the government, and Paragraph 12 simultaneously reserves the right to modify that calculation if a prior crime of violence alters the applicable BOL. Those two provisions coexist -- the carve-out is not nullified because the parties happened to be aware of the conviction but unaware of its crime-of-violence status when they drafted the agreement.

In any event, the carve-out dispute remains of no moment. Defendant agreed to a BOL of 20 for Search of Residence and a +2 multiple-firearms enhancement for that count, and a +4 connection-with-another-felony enhancement for the Spent Shell Casings conduct. (Plea Agreement ¶ 12.) These are defendant's own figures and in the signed Plea Agreement, spelled out -- no carve-out required. Under U.S.S.G. § 3D1.2(d), the two § 922(g) counts group together, and under § 3D1.3(b), both the +4 and +2 enhancements apply to the grouped offense level because both arise from the combined relevant conduct. Whether or not the carve-out is validly invoked to substitute a BOL of 20 for the Spent Shell Casings count, the result under § 3D1.3(b) is the same. The government's recommended range of 92 to 115 months is supported by the Plea Agreement's own agreed

calculations, independent of any carve-out.

2. The Plea Agreement Is the Signed Filing, Not an Email

*a. The July 17 Email Was a Tentative Estimate, Not a Binding Promise, Based on Information Known to Both Parties*

For a pre-plea representation to constitute an enforceable promise under Santobello, it must actually be a promise -- not a preliminary estimate. Indeed, not every pre-plea statement constitutes an enforceable promise under Santobello; rather, courts distinguish between binding commitments and non-binding estimates or predictions regarding Guidelines calculations. Untied States v. Benchimol, 471 U.S. 453, 455 (1985) (per curiam). The July 17 email is unambiguous on this score. It begins with: "If I'm doing the grouping rules correctly, I think the Court will use 22 as the offense level, and there won't be an upward adjustment for multiple counts because the other counts are too low." Two features of this sentence are dispositive.

First, the statement is prefaced with an explicit condition of uncertainty: "If I'm doing the grouping rules correctly." A representation qualified by the speaker's own uncertainty about the underlying analysis cannot constitute a promise. Government counsel was flagging, expressly, that she might be mistaken. No reasonable defense counsel -- and certainly no reasonable defendant -- could read that phrase as a binding commitment.

Second, the statement uses the words "I think" -- not "I promise," "the government agrees," "we commit," or any other language of obligation. In contract law, an expression of present belief or prediction is not a promise. See Restatement (Second) of Contracts

§ 2, cmt. c (distinguishing promises from predictions and expressions of intention). Courts in this Circuit have recognized that government representations in the nature of estimates or predictions -- rather than commitments -- do not give rise to enforceable plea agreement obligations. See, e.g., United States v. Coffman, No. 2:08-CR-0093-KJM, 2017 WL 4883280, at *7 (E.D. Cal. Oct. 30, 2017) (government not bound to "estimate" of restitution range in plea agreement); United States v. Movsesyan, No. 2:15-CR-236-GEB, 2018 WL 3014140, at *2 (E.D. Cal. June 14, 2018) (government not bound to estimates of Guidelines that plea agreement expressly marked as not binding). The July 17 email is a textbook example of the former, not the latter.

Defendant's characterization of the email as a binding "pre-plea representation" elides this critical distinction. A representation can be accurate, genuinely made, and reasonably communicated without rising to the level of a contractual promise. Nothing in Santobello or its progeny requires the government to guarantee its preliminary Guidelines estimates at the risk of plea agreement breach.

*b. The Integration Clause Bars Reliance on Pre-Execution Email*

Independently, the Plea Agreement's integration clause forecloses the relief defendant seeks. Paragraph 28 provides that "except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney." Pre-execution email communications are precisely the type of prior understanding that integration clauses are designed to supersede.

Defendant argues that the parol evidence rule does not bar

extrinsic evidence used to resolve an ambiguity in an existing term. See In re Doe, 57 F.4th at 674. But that exception does not apply here. First, Paragraph 12 of the Plea Agreement is not ambiguous. Its reservation of rights to argue for "additional . . . adjustments" means exactly what it says. There is no need to resort to the July 17 email to interpret Paragraph 12's meaning, because Paragraph 12's meaning is plain. The email is not being offered to resolve an ambiguity; it is being offered to create an obligation that Paragraph 12 expressly did not impose.

Second, in any event, defendant's attempt to use extrinsic evidence is not permissible here. As the Ninth Circuit explained in Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc., 971 F.2d 272, 277 (9th Cir. 1992), extrinsic evidence may be used to explain or clarify a term, but not to add new obligations to a fully integrated agreement. Here, defendant invokes the email to overcome the express reservation of rights in Paragraph 12 -- to transform that reservation into a prohibition. Defendant's theory would invert the integration clause by allowing pre-plea negotiations to override express reservation of rights -- precisely what it prohibits. The integration clause controls.

*c. Defendant Was Expressly Warned No Binding Prediction Could Be Made*

Finally, defendant's claim of prejudicial reliance is undermined by Paragraph 27 of the very agreement he personally signed. That provision states that "no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum." Defendant acknowledged this

limitation in writing. He cannot now claim detrimental reliance on a pre-signing email in the face of a written acknowledgment that prosecutorial sentencing predictions are not binding. The Plea Agreement put defendant on notice, in terms he agreed to, that the sentence he actually received might differ from any estimate previously provided.

3. Both Analytical Paths Yield a Total Offense Level of 23

The two § 922(g) counts form a single group under U.S.S.G. § 3D1.2(d), which expressly lists § 2K2.1 as a Guideline subject to mandatory grouping. The Sentencing Commission's own training materials confirm that when multiple counts are referenced to a § 3D1.2(d) Guideline, separate instances of harm are not a basis to resist grouping. The PSR declined to group the counts, but that question is ultimately academic: as shown below, the total offense level of 23 results under either the PSR's no-grouping approach or the § 3D1.2(d) grouping approach.

Under § 3D1.2(d) grouping, the FEMA count -- at adjusted level 12 per both the PSR and the Plea Agreement -- is more than nine levels below the § 922(g) group and is disregarded, contributing zero units. Government counsel's July 17 email was correct on this point: "there won't be an upward adjustment for multiple counts because the other counts are too low." No multi-count upward adjustment applies. But this does not produce a total offense level of 19 or 21, as defendant's supplement claims. Defendant's claim is wrong because he stops the analysis after identifying the highest single-count adjusted level within the group, without completing the § 3D1.3(b) analysis.

Under § 3D1.3(b), the grouped offense level is determined with all applicable specific offense characteristics from the combined relevant conduct -- not just the highest individual count's enhancements in isolation. Here, the § 922(g) group contains two counts of relevant conduct: the 2022 shell casings possession (with a +4 connection-with-felony enhancement) and the 2023 residence search (with a +2 multiple-firearms enhancement). Applied to the BOL of 20 that defendant expressly agreed to for the "Search of Residence" conduct -- without invoking the carve-out at all -- the grouped adjusted offense level is 20 + 4 + 2 = 26. With the carve-out applied to the "Spent Shell Casings" BOL as well, the result is the same: 20 + 4 + 2 = 26. After subtracting three levels for acceptance of responsibility, the total offense level is 23 under either path. The July 17 email's hedged language -- "if I'm doing the grouping rules correctly, I think" -- was not a promise, but government counsel was right that no § 3D1.4 adjustment would apply. She simply did not carry the § 3D1.3(b) analysis through to its conclusion.

**B. Defendant's Motion Fails without the Requisite Prejudice Showing**

To obtain specific performance, defendant must demonstrate that his guilty plea "rested in any significant degree on" the government's alleged promise. Santobello, 404 U.S. at 262; Jackson, 21 F.4th at 1211. Here, the record does not support that showing. The government recommends a total offense of 23 (for a range of 92 to 115 months based on criminal history category VI), which is the **same** range the PSR calculated and which is correct under both the PSR's methodology and the § 3D1.2(d)/3D1.3(b) grouping framework. Defendant contends he expected a total offense level of 19 (which

would results in a range of 57 to 71 months based on criminal history category V or 63 to 78 months for category VI). But even assuming he hoped for a total offense level of 19, the carve-out in Paragraph 12 -- which defendant signed -- authorized a 20 BOL for both § 922(g) acts based on his prior crime of violence. And as shown above, even without the carve-out, the BOLs listed in the Plea Agreement yield a total offense level of 23 under § 3D1.3(b). Even if the pre-plea email was considered, it was not a promise. Even if it was a promise, it is barred by the integration clause. Even if the government's sentencing memorandum constituted a breach, there is no prejudice because it is supported by defendant's own Plea Agreement figures.

The Plea Agreement conferred substantial and concrete benefits on defendant that exist entirely independent of any Guidelines estimate. The government agreed to dismiss Count One. The government has not sought a superseding indictment adding and did not require defendant to admit to firearm and ammunition charges from the day of defendant's arrest. The government agreed not to charge defendant for the FEMA fraud—conduct he admitted committing. Defendant received a broad non-prosecution agreement for federal fraud violations. These benefits are real and quantifiable, and they formed the core of the consideration defendant bargained for. Nothing about the government's sentencing recommendation disturbs those benefits.

Moreover, as noted above, defendant was expressly advised that prosecutors cannot make binding sentencing predictions, both in writing at Paragraph 27 and during the change of plea colloquy. When a defendant is warned in the agreement itself that sentencing

estimates are not binding, that warning defeats a claim that the guilty plea rested on any such estimate. Defendant's assertion that "had that been the case, he would not have agreed to plead guilty in the first place" (Def. Mot. at 4) is a post-hoc characterization contradicted by the document he signed and the fact that he is not even seeking to withdraw his plea.

**V. CONCLUSION**

The government complied with the Plea Agreement and the motion should be denied in its entirety.

First, the carve-out provision in Paragraph 12 authorized the government to present the Probation Office's Guidelines calculation, which appropriately applied § 2K2.1(a)(4)(A) in light of defendant's CPC § 422(a) prior conviction. Paragraph 12's express grouping analysis confirms that the total offense level of 23 is correct under both analytical frameworks: the PSR's separate-group approach and the § 3D1.2(d)/3D1.3(b) grouping approach both yield a combined adjusted level of 26 and a total offense level of 23 after acceptance of responsibility. The carve-out dispute is academic -- defendant's own agreed BOLs produce the same result. Second, there are no ambiguities in the Plea Agreement that require the Court to look at extrinsic evidence, and certainly not government counsel's July 17 email (which, hedged with explicit expressions of uncertainty and superseded by the integration clause, does not constitute a binding promise). Defendant received precisely the substantial benefits -- the non-prosecution agreement, the Count One dismissal, and the avoidance of a firearm superseder -- that he bargained for.

The undersigned, counsel of record for plaintiff, certifies that this brief contains 4,928 words, which complies with the word limit of L.R. 11-6.1. and complies with the word limit set by the Court's standing order dated October 1, 2024.

Dated: April 11, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

/s/
KEVIN J. BUTLER
JENA A. MACCABE
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA