Megan E. Foster (SBN 317634)
Law Office of Megan E. Foster, APC
401 W "A" Street, Ste 200
San Diego, CA 92101
Phone: (619) 736-3707
megan.foster.esq@gmail.com

Zach A. Brooks (SBN 346455)
Zach Brooks Law, SP
421 Broadway, Unit 698
San Diego, CA 92101
zbrooks@zachbrookslaw.com

*Attorneys for Defendant Zihirr Mitchell*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**HONORABLE FERNANDO AENLLE-ROCHA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>ZIHIRR MITCHELL,<br><br>                              Defendant. | Case No.:  25-cr-132-FLA<br><br>**DEFENDANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SPECIFIC PERFORMANCE OF PLEA AGREEMENT** |

# TABLE OF CONTENTS

I.  INTRODUCTION .......................................................................................................4

II. THE GOVERNMENT BREACHED THE PLEA AGREEMENT BY INVOKING THE CARVE-OUT BASED ON A CONVICTION IT DELIBERATELY ACCOUNTED FOR IN DRAFTING ........................................................................5

A. The Word "Additional" Means Beyond What the Parties Already Accounted For, Not Merely a Conviction Whose Legal Significance the Government Underappreciated ...................................................................................................5

B. The Government's Pre-Plea Report Argument Does Not Withstand Scrutiny .......6

C. The CPC § 422(a) Conviction Was Not "Additional," It Was a Deliberate Drafting Choice ......................................................................................................7

D. Cuero Remains Persuasive; Kernan Does Not Help the Government....................8

III. THE GOVERNMENT BREACHED THE PLEA AGREEMENT BY RECOMMENDING A MULTI-COUNT UPWARD ADJUSTMENT CONTRARY TO ITS PRE-PLEA REPRESENTATION ..................................................................9

A. The July 17 Email Was a Representation That Induced the Plea, and the Government's Sentencing Memorandum Contradicted It Directly. .......................9

B. The Integration Clause Does Not Bar the Email .................................................10

IV. THE GOVERNMENT'S NEWLY MINTED § 3D1.3(b) THEORY DOES NOT CURE THE BREACH....................................................................................11

V. MR. MITCHELL WAS PREJUDICED BY THE GOVERNMENT'S BREACH..13

VI. SPECIFIC PERFORMANCE BEFORE A DIFFERENT JUDGE IS THE APPROPRIATE REMEDY ..........................................................................14

VII. CONCLUSION .....................................................................................................15

25-cr-132-FLA

# TABLE OF AUTHORITIES

**Cases**

*Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016) ...................................7

*Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992). .................................................................................................................................... 11

*Cuero v. Cate*, 850 F.3d 1019 (9th Cir. 2017) .......................................................................9

*Doe v. United States Dist. Ct. (In re Doe)*, 57 F.4th 667, 674 (9th Cir. 2023).................. 11

*Kernan v. Cuero*, 583 U.S. 1 (2017) ......................................................................................9

*Santobello v. New York*, 404 U.S. 257, 262 (1971) .............................................4, 10, 12, 14

*United States v. Alcala-Sanchez,* 666 F.3d 571, 577 (9th Cir. 2012)            12, 13, 14, 15

*United States v. Benchimol*, 471 U.S. 453 (1985) ..............................................................10

*United States v. Camarillo-Tello,* 236 F.3d 1024, 1028 (9th Cir. 2001);            14

*United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002). .................................11

*United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000) ......................................15

*United States v. Whitney*, 673 F.3d 965, 973 (9th Cir. 2012)............................................14

**Statutes**

18 U.S.C. § 3553 ...................................................................................................................13

C.P.C. § 422............................................................................................................... 2, 7, 8

3

25-cr-132-FLA

# I.
## INTRODUCTION.

The government's opposition does not refute the breach; it confirms it. In attempting to defend its departure from the Plea Agreement's agreed sentencing framework, the government reveals three things: (1) its invocation of the carve-out rested on a conviction listed on the face of the indictment and expressly incorporated into the Plea Agreement itself; (2) its sentencing memorandum recommended a +2 multi-count upward adjustment under U.S.S.G. § 3D1.4 that its own pre-plea email expressly told defense counsel would not apply; and (3) the analytical framework it now uses to justify a total offense level of 23, specifically § 3D1.2(d) grouping followed by § 3D1.3(b) aggregation, which appears nowhere in its sentencing memorandum and is, by the government's own admission in a footnote, a theory "both the Probation Office and the parties missed . . . in the sentencing filings." (Dkt. 43 at 2 n.2.)

That last concession is dispositive on prejudice. The government asks the Court to find that Mr. Mitchell suffers no prejudice because a newly surfaced, post-hoc analytical path, one the government concedes no one had identified when sentencing filings were submitted, happens to reach the same number as the flawed calculation it actually presented to the Court. But the prejudice inquiry does not ask whether the government can later reconstruct an alternative path to the same outcome. It asks whether Mr. Mitchell's decision to plead rested in significant degree on the government's representations, and whether the government honored those representations as agreed to in the Plea Agreement. *Santobello v. New York*, 404 U.S. 257, 262 (1971). It did not.

Mr. Mitchell pleaded guilty understanding that his total offense level would be 19. The government told him so, in writing, before he signed. The Plea Agreement's carve-out was not designed, and cannot reasonably be read, to permit the government to retroactively reclassify a conviction it had in hand from the inception of the case. The government's sentencing memorandum recommended a multi-count upward adjustment it had expressly represented would not apply. These are independent breaches. The government's opposition offers no genuine answer to either. The motion should be granted.

25-cr-132-FLA

## II.
## THE GOVERNMENT BREACHED THE PLEA AGREEMENT BY INVOKING THE CARVE-OUT BASED ON A CONVICTION IT DELIBERATELY ACCOUNTED FOR IN DRAFTING.

A. *The Word "Additional" Means Beyond What the Parties Already Accounted For, Not Merely a Conviction Whose Legal Significance the Government Underappreciated.*

The government argues that "additional" in Paragraph 12's carve-out simply means any prior conviction "not the basis for the stated offense level calculation," that is, any known conviction not already reflected in the chosen Guidelines subsection can trigger the carve-out, regardless of whether the government had it in hand and consciously chose not to invoke it. (Dkt. 43 at 7–8.) That reading drains the word of all significance and converts the carve-out from a safeguard to government *against newly discovered information* into a trap the government can spring at will.

The ordinary meaning of "additional" is coming by way of addition, supplementary to what is already present. When a plea agreement sets forth agreed Guidelines calculations and then reserves the right to modify those calculations based on "additional prior conviction(s)," the natural reading is that the carve-out addresses convictions that surface *after* the agreement is struck, the kind of criminal history that Probation's PSR investigation might uncover that neither party had accounted for when negotiating. That reading gives the provision a coherent, bounded purpose. The government's reading gives it no limit at all – under its theory, the government could always invoke the carve-out simply by pointing to a conviction it had already reviewed and decided not to cite for a particular subsection. That is not a carve-out, it is a unilateral escape clause.

The government insists that reading "additional" to require the conviction be previously unaccounted for would render the carve-out "a nullity in virtually every case." (Dkt. 43 at 8.) In reality, the opposite is true. The government's own reading renders the agreed calculations a nullity, because the government could always identify a known conviction it chose not to use and walk back the agreement after the fact. The defense's reading preserves both provisions: it gives the agreed calculations real force while allowing

5

25-cr-132-FLA

the carve-out to operate as designed, covering genuinely new criminal history information that surfaces through Probation's independent investigation. That is a coherent purpose. The government's reading has none.

B. *The Government's Pre-Plea Report Argument Does Not Withstand Scrutiny.*

The government suggests that Mr. Mitchell's decision not to seek a pre-plea report somehow undermines his breach claim. (Dkt. 43 at 4–5.) This argument fails both as a matter of logic and on the merits.

As a threshold matter, the decision not to seek a pre-plea report was itself a direct consequence of the government's pre-plea representations. Defense counsel was told, in writing, that the total offense level would be 19 and the government confirmed – based in large part on the single crime of violence in Mr. Mitchell's known criminal history – that it did not view him as a career offender. Having received that representation directly from the assigned prosecutor, there was no basis to seek an independent report to verify it. The government cannot induce reliance on its own representations and then cite that reliance as a deficiency in the defense's pre-plea diligence.

The argument also fails on the merits, because a pre-plea report would not have identified this multi-count issue prior to Mr. Mitchell pleading. A pre-plea Probation report solely addresses criminal history, not Guidelines calculations and analysis. Counsel of course does not submit the offer to Probation and ask Probation to determine what the likely guideline range would be. Thus, a pre-plea report solely would have confirmed the existence of Mr. Mitchell's prior convictions, including the CPC § 422(a) conviction. It would not have analyzed how the sentencing factors set forth in Paragraph 12 of the Plea Agreement would operate, nor what base offense level would attach to each category of conduct under those provisions. The grouping question the government now invokes in its § 3D1.3(b) theory, which the government itself concedes both parties and Probation missed entirely, is a Guidelines calculation issue, not a criminal history issue. It would not have appeared in a pre-plea report.

25-cr-132-FLA

Most telling of all, a pre-plea report would only have been useful if there were an additional crime of violence that the parties had not accounted for when drafting the agreement. There was none. The CPC § 422(a) conviction was and is the only crime of violence in Mr. Mitchell's record, and it was known to both parties from the inception of the case. No pre-plea report would have surfaced new information, because no new information existed to be surfaced. The carve-out provision is designed to address newly discovered criminal history that could not have been anticipated at the time of contracting. That is precisely the circumstance that did not exist here, and no pre-plea report would have changed it. This argument is a red herring and should be rejected.

C. *The CPC § 422(a) Conviction Was Not "Additional," It Was a Deliberate Drafting Choice*

The government does not dispute, because it cannot, that the CPC § 422(a) conviction was known to it at every stage of this case. It appeared as a predicate felony on page 4 of the Indictment. It was discussed at the detention hearing. It is expressly listed on page 10 of the Plea Agreement itself. The government was also aware that CPC § 422(a) categorically qualifies as a crime of violence. *See Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1130 (9th Cir. 2016). There was no ambiguity, no newly discovered information, and no oversight. The government simply chose not to invoke the conviction as the basis for the Guidelines subsection it cited in Paragraph 12.

That choice was deliberate. Paragraph 12 reflects two different Guidelines subsections, drafted in the same document, by the same attorneys, at the same time, with the CPC § 422(a) conviction sitting in the record. For the Search of Residence conduct, the government cited § 2K2.1(a)(4)(B)(ii)(I), a subsection that does not require a prior crime of violence. For the Spent Shell Casings conduct, the government cited § 2K2.1(a)(6)(A), a subsection applicable to prohibited persons generally, also without reference to a crime of violence. Both subsections yield BOL 20 for the Search of Residence and BOL 14 for the Spent Shell Casings. The government reviewed the conviction, evaluated the applicable subsections, and selected the ones reflected in the agreement. Having made those deliberate

25-cr-132-FLA

choices, it cannot invoke a provision designed for newly discovered information to undo calculations it made with full awareness of the relevant conviction.

The government's rebuttal, that the defense's logic would also lock in the Search of Residence BOL and prevent the carve-out from ever operating, misses the point. (Dkt. 43 at 10.) The argument is not about which BOLs the carve-out technically releases if triggered. The argument is that the trigger condition was never met: the CPC § 422(a) conviction was already in the room when the parties struck the deal. "Additional" means additional. This conviction was not.

Notably, there is a deeper inequity in the government's position that its opposition does not acknowledge. As part of the Plea Agreement, the government agreed to dismiss Count One at sentencing and not to prosecute Mr. Mitchell for the uncharged FEMA fraud conduct. Mr. Mitchell conferred real and substantial value on the government by admitting to that conduct, saving prosecutorial and court resources, and agreeing to a blanket appellate waiver as long as he is sentenced in accordance with the terms of his plea agreement. Yet under the government's interpretation of "additional," it now uses the CPC § 422(a) conviction to reclassify the Guidelines calculations for both the Spent Shell Casings conduct (the dismissed Count One) and the Search of Residence conduct, effectively sentencing Mr. Mitchell on all three Counts at a significantly higher guideline range – a swing that translates to the possibility of multiple additional years in custody and a full appellate waiver – through the back door of the carve-out. That is plainly prejudicial. The government cannot simultaneously take credit for dismissing Count One and not charging the FEMA fraud while using the carve-out to extract the full sentencing weight of all three. That is not what Mr. Mitchell bargained for and it is not what the Plea Agreement permits.

D. *Cuero Remains Persuasive; Kernan Does Not Help the Government.*

The government argues that *Cuero v. Cate*, 850 F.3d 1019 (9th Cir. 2017), is inapplicable because the cited portions are from a concurrence and because the Supreme Court reversed. (Dkt. 43 at 8–9.) Neither point is persuasive.

8

25-cr-132-FLA

The concurring opinion's analysis, that the government may not use a previously known conviction to unilaterally alter a plea agreement's sentencing framework after the fact, and that prosecutors who wish to protect themselves against that consequence can draft express provisions covering known convictions, reflects the underlying due process principle *Cuero* applied. It is persuasive regardless of its procedural posture, and the government relied on *Cuero* itself in its own filings.

As to *Kernan v. Cuero*, 583 U.S. 1 (2017): the Supreme Court reversed solely on the ground that no "clearly established federal law" supported habeas relief under AEDPA's demanding standard. The Court did not hold that the government's conduct was permissible. It did not abrogate the due process principle that a defendant has a right to enforce the terms of the plea agreement he entered. AEDPA's "clearly established law" filter has no application in a direct proceeding. *Kernan* is a habeas opinion, and nothing in it authorizes the government to walk back a plea agreement on the basis of a conviction it had known about since the case was filed.

### III.
### THE GOVERNMENT BREACHED THE PLEA AGREEMENT BY RECOMMENDING A MULTI-COUNT UPWARD ADJUSTMENT CONTRARY TO ITS PRE-PLEA REPRESENTATION.

A. *The July 17 Email Was a Representation That Induced the Plea, and the Government's Sentencing Memorandum Contradicted It Directly.*

The government characterizes the July 17 email as a hedged estimate, unenforceable under *Benchimol*. (Dkt. 43 at 12–13.) But the government simultaneously acknowledges in its opposition that the email's prediction about the multi-count adjustment "has now proven correct," that no § 3D1.4 upward adjustment should have applied. (Dkt. 43 at 4 n.3.) Yet the government's own sentencing memorandum recommended exactly that: a +2 multi-count upward adjustment under § 3D1.4. (Gov. Sent. Memo. at 2–3.) The government now tells this Court that its pre-plea representation was accurate and that its sentencing memorandum recommended the opposite. That is the breach, not what the government says in opposition, but what it submitted to the this Court.

25-cr-132-FLA

The government's reliance on *United States v. Benchimol*, 471 U.S. 453 (1985), is misplaced. *Benchimol* addressed the narrow question of whether the government was obligated to affirmatively advocate for a sentencing recommendation it had agreed to make, not merely recite it. It did not address whether a pre-plea representation about how the Guidelines would be calculated, made in direct response to a question from defense counsel before the defendant signed, could form part of the inducement for a guilty plea. Under *Santobello*, it can. *See* 404 U.S. at 262 ("when a plea rests in any significant degree on a promise or agreement of the prosecutor . . . such promise must be fulfilled").

Defense counsel asked how the Plea Agreement's multiple categories of conduct would group for Guidelines purposes, and what the total offense level would be. The government answered the total offense level would be 19: "there won't be an upward adjustment for multiple counts because the other counts are too low." Mr. Mitchell understood this, relied on it, and signed. Its sentencing memorandum said the opposite. That discrepancy is not a matter of estimate versus promise, it is a material representation made to induce a plea, followed by conduct that contradicted it.

B. *The Integration Clause Does Not Bar the Email.*

The government argues that Paragraph 28's integration clause forecloses reliance on the July 17 email. (Dkt. 43 at 13–14.) But the parol evidence rule does not bar extrinsic evidence offered to resolve an ambiguity in an existing term, only evidence offered to add new terms to a fully integrated agreement. *Doe v. United States Dist. Ct. (In re Doe)*, 57 F.4th 667, 674 (9th Cir. 2023); *Brinderson-Newberg Joint Venture v. Pacific Erectors, Inc.*, 971 F.2d 272, 277 (9th Cir. 1992).

The July 17 email is not offered to add a new term. It is offered to show what both parties understood Paragraph 12's grouping provisions to mean when Mr. Mitchell signed, specifically whether the multiple categories of conduct would generate a § 3D1.4 upward adjustment. That question is not a new promise imported from outside the agreement, it is a question about how the existing sentencing framework was understood to operate. Extrinsic evidence bearing on that mutual understanding is properly considered

10

25-cr-132-FLA

notwithstanding Paragraph 28. And if any ambiguity remains after consulting the email, that ambiguity is resolved in Mr. Mitchell's favor as the non-drafter of the contract. *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002).

## IV.
### THE GOVERNMENT'S NEWLY MINTED § 3D1.3(b) THEORY DOES NOT CURE THE BREACH.

The government's principal response on prejudice is that even using the Plea Agreement's own agreed BOLs, without invoking the carve-out, § 3D1.2(d) grouping followed by § 3D1.3(b) aggregation independently produces a total offense level of 23. (Dkt. 43 at 2–3, 15–16.) This argument fails for two reasons that have nothing to do with whether the government's Guidelines math is correct.

**A. The Breach Occurred When the Sentencing Memorandum Was Filed and Cannot Be Cured by a Theory the Government Devised Afterward.**

The § 3D1.3(b) framework appears nowhere in the government's sentencing memorandum. Instead, its sentencing memorandum adopted the Probation Office's separate-group methodology and recommended a +2 multi-count upward adjustment under § 3D1.4, the opposite of what the government had told defense counsel would apply. The opposition now abandons that methodology entirely and substitutes a new one, offered for the first time in response to Mr. Mitchell's breach motion.

*Alcala-Sanchez* forecloses this maneuver directly: a breach "is not cured by later mitigation," because "one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge." 666 F.3d at 577. The breach is measured at the moment the government submitted a sentencing memorandum contradicting its own pre-plea representations, not at whatever moment the government identifies an alternative path to the same number. Whether or not § 3D1.3(b) independently supports a total offense level of 23 is therefore beside the point. The government cannot retroactively cure a breach by showing that a different analytical route, one it never presented to the Court, would have arrived at the same destination.

25-cr-132-FLA

The principle extends even further than the government's opposition acknowledges. Even an explicit, on-the-record retraction of an erroneous recommendation before sentencing does not cure a plea agreement breach. *Alcala-Sanchez*, 666 F.3d at 576 ("at that late stage, the breach, however inadvertent, could not be undone"). If walking back an erroneous recommendation in open court before sentencing is insufficient to cure the harm, the government's post-breach identification of an alternative analytical framework in opposition briefing is plainly insufficient as well.

**B. The Government's Own Concession Defeats Its Prejudice Argument.**

The government acknowledges in a footnote that "both the Probation Office and the parties missed this grouping rule in the sentencing filings." (Dkt. 43 at 2 n.2.) That concession is fatal to the government's prejudice rebuttal.

The prejudice inquiry under *Santobello* is backward-looking: did Mr. Mitchell's plea rest in significant degree on the government's representations? 404 U.S. at 262. It did. The government told him his total offense level would be 19. The government's sentencing memorandum sought 23 through a methodology it now concedes everyone had missed at the time. Mr. Mitchell could not have anticipated a framework that the government, Probation, and defense counsel all failed to identify. Rather, he waived his trial rights, admitted to uncharged fraud conduct, and agreed to a blanket appellate waiver in reliance on a representation the government walked away from and now seeks to impose years longer in custody based on a guideline range outside what it agreed to in the Plea Agreement. Asking him to absorb the consequences of a calculation no one saw coming, one that was never disclosed to him before he signed, is precisely the prejudice *Santobello* prohibits.

The government's "no prejudice" argument depends entirely on a theory it concedes was invisible to everyone until after Mr. Mitchell's breach motion was filed. The government's alternative theory does not cure the breach; it compounds it.

///

///

12

25-cr-132-FLA

## V.

## MR. MITCHELL WAS PREJUDICED BY THE GOVERNMENT'S BREACH.

Mr. Mitchell entered the Plea Agreement understanding his total offense level would be 19, producing a Guidelines range of approximately 57–71 months at Criminal History Category V or 63–78 months at Category VI. The government now seeks 92 to 115 months, a range more than 30 months above the top of what Mr. Mitchell understood he faced and roughly double the low end. That disparity is not theoretical. It flows directly from two independent breaches: the carve-out invocation that substituted BOL 20 for agreed BOL 14 on the Spent Shell Casings count, and the multi-count adjustment that contradicted the government's own pre-plea representation.

The government argues that Mr. Mitchell suffered no prejudice because the Plea Agreement's substantial benefits, including Count One dismissal, no fraud superseder, and the non-prosecution agreement, remain intact. (Dkt. 43 at 17.) But Mr. Mitchell bargained for those benefits within a specific Guidelines framework. The government cannot strip him of the latter while pointing to the former, and ask him to be sentenced as if he pleaded guilty to all three charges. Put simply, a breach is not excused because the breaching party honored some of its other obligations. *Alcala-Sanchez*, 666 F.3d at 575–76.

The government also points to Paragraph 27's acknowledgment that "no one . . . can make a binding prediction or promise regarding the sentence defendant will receive." (Dkt. 43 at 14–15.) But that provision addresses the ultimate sentence, the disposition the Court imposes after considering all 18 U.S.C. § 3553(a) factors, which of course the Parties cannot know at the time the Plea Agreement is signed. This provision does not authorize the government to recommend a Guidelines range materially inconsistent with its own pre-plea representations about how the Guidelines would be calculated, nor does it authorize the government to now seek a different guidelines range that it agreed to when it made its initial offer to Mr. Mitchell. The government's agreed-upon Guidelines framework is not the same thing as the sentence, and Paragraph 27 does not swallow Paragraph 12.

13

25-cr-132-FLA

What Mr. Mitchell bargained for, beyond the specific numbers, was the government standing beside him at sentencing and presenting a united front to the Court. This court has recognized that "the persuasive force behind a sentencing recommendation is enhanced when it is urged by the government in addition to the defense." *United States v. Camarillo-Tello*, 236 F.3d 1024, 1028 (9th Cir. 2001); *see also United States v. Whitney*, 673 F.3d 965, 973 (9th Cir. 2012). The benefit of that united front is the defendant's to receive "regardless of outcome," because what a defendant obtains through a plea agreement is "the added persuasiveness of the government's support" at the moment of sentencing. *Camarillo-Tello*, 236 F.3d at 1028. The government's sentencing memorandum did not present a united front. It presented a Guidelines range nearly double what Mr. Mitchell understood he faced, derived from a carve-out invocation and a multi-count adjustment that contradicted the government's own pre-plea representations. That deprivation is prejudice, independent of what sentence the Court ultimately imposes.

Finally, the appellate waiver in Paragraph 17 deepens the prejudice. By pursuing a Guidelines range constructed on a methodology no one had identified at the time of contracting, and/or adopting Probation's calculation, the government has expanded the practical scope of Mr. Mitchell's waiver far beyond what he understood when he signed. He waived appellate rights with respect to a sentence he understood would be tethered to a total offense level of 19. He now faces a range derived from a theory everyone concedes was missed, with no ability to challenge it on appeal. *Alcala-Sanchez* recognized this precise harm. 666 F.3d at 575–76.

## VI.
## SPECIFIC PERFORMANCE BEFORE A DIFFERENT JUDGE IS THE APPROPRIATE REMEDY.

Where the government breaches a plea agreement, specific performance before a different judge is the appropriate remedy. *United States v. Alcala-Sanchez*, 666 F.3d 571, 577 (9th Cir. 2012); *Santobello*, 404 U.S. at 262–63. Reassignment is required because this Court has already been exposed to the government's breaching conduct, including the

14

25-cr-132-FLA

carve-out invocation, the § 3D1.4 multi-count adjustment, and the Guidelines range of 92 to 115 months, and because "one really cannot calculate how the government's error and breach may have affected the perceptions of the sentencing judge." *Alcala-Sanchez*, 666 F.3d at 577. Mr. Mitchell does not seek to withdraw his plea. He seeks enforcement of the deal he made.

The rule applies even where the breach was inadvertent and even where the sentencing judge states it was not influenced by the government's erroneous submission. *Alcala-Sanchez*, 666 F.3d at 575–76. "The integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *Id.* at 577 (quoting *United States v. Mondragon*, 228 F.3d 978, 981 (9th Cir. 2000)). "To excuse plea agreement breaches in light of later attempted mitigation would lessen the government's duty of strict compliance." *Id.*

## VII.
## CONCLUSION.

The government breached the Plea Agreement in two independent and material respects. It invoked a carve-out provision to escape a Base Offense Level it deliberately agreed to, based on a conviction it had known about since the Indictment was filed and expressly incorporated into the Plea Agreement itself. And it recommended a multi-count upward adjustment it had expressly told defense counsel would not apply. The government's opposition confirms both points while offering a newly discovered alternative theory, one concededly missed by everyone at sentencing, to paper over the prejudice its breaches caused.

///

///

///

///

///

///

15

25-cr-132-FLA

Mr. Mitchell respectfully requests that this Court grant the motion, find that the government breached the Plea Agreement, and reassign this matter to a different district court judge for sentencing with the government bound to the terms of the agreement it entered into.

Respectfully submitted,

DATED: May 8, 2026

*Megan E. Foster*
**MEGAN E. FOSTER**
Law Office of Megan E. Foster, APC
Attorney for Mr. Mitchell

*Zach A. Brooks*
**ZACH A. BROOKS**
Zach Brooks Law, SP
Attorney for Mr. Mitchell

25-cr-132-FLA